NEBRASKA STATE BOARD OF AGRICULTURE, APPELLEE, V.
NEBRASKA STATE RACING COMMISSION, APPELLANT.
478 N.W.2d 270

Filed January 3, 1992.    No. 89-809.

Robert M. Spire, Attorney General, and L. Jay Bartel for appellant.

Hal Bauer, of Bauer, Galter & O'Brien, for appellee.

Kim M. Robak, of Rembolt Ludtke Parker & Berger, for amicus curiae Platte County Agricultural Society.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

The Nebraska State Racing Commission (Racing Commission) appeals from a declaratory judgment granted by the district court for Lancaster County in favor of the Nebraska State Board of Agriculture (Board), namely, the judicial determination that the Board's racetrack at the State Fairgrounds in Lincoln had a "total annual parimutuel handle" of less than $12 million in 1987 and, therefore, was a "recipient track" entitled to receive money from the Track Distribution Fund under Neb. Rev. Stat. §§ 2-1208.03 and 2-1208.04 (Reissue 1987). To reach the foregoing conclusion, the district court construed the phrase "total annual parimutuel handle" to exclude any wagers accepted on simulcast races for the purposes of § 2-1208.03(5), which states: "Recipient track shall mean a racetrack with a total annual parimutuel handle, based on the previous racing year, of twelve million dollars or less." We reverse the district court's judgment.

This case involves interaction of two legislative programs, separately enacted to strengthen the "racing, breeding, and parimutuel wagering industry" in Nebraska. See, Neb. Rev. Stat. §§ 2-1224 through 2-1227 (Reissue 1987); §§ 2-1208.03 and 2-1208.04. The first of these programs is the Track Distribution Fund, by which revenue, based on a racetrack's total annual parimutuel handle, is distributed from larger racetracks to smaller racetracks. See §§ 2-1208.03 and

2-1208.04. The second program is a 1987 law authorizing "experimental" intrastate telecasting of horseraces, or "simulcasting," which permits Nebraska racetracks to accept wagers on races taking place at other locations, but which are broadcast by television to an authorized site where wagers are accepted on the televised race. See §§ 2-1224 et seq.

The question to be resolved is how wagers on simulcast races are involved in computing the total annual parimutuel handle for purposes of the Track Distribution Fund. The Racing Commission contends that wagers on simulcast races are part of the total annual parimutuel handle of the track where the wagers are accepted. The Board insists that the total amount wagered on simulcast races should be assigned to the total annual parimutuel handle of the track where the races are run and which is the origin of the racing telecast. The outcome of this case and a potential $200,000 distribution to the Board from the Track Distribution Fund depend on the definition of "total annual parimutuel handle," which is included in the legislation under examination, but which phraseology is undefined by Nebraska statutes.

## TRACK DISTRIBUTION FUND

In 1986, the Legislature established the Track Distribution Fund, codified at §§ 2-1208.03 and 2-1208.04, for the purpose of subsidizing smaller Nebraska racetracks at the expense of the state's larger and more successful tracks. Money for the Track Distribution Fund is supplied by the tracks themselves, which are required to withhold a small percentage of their gross daily receipts from so-called "exotic wagers," such as the daily double, exacta, trifecta, pick six, and others. Each month, the racetracks pay the withheld funds to the Racing Commission, which maintains the Track Distribution Fund. Annual collections for the fund are subsequently distributed to qualifying tracks during the following year based on the formula provided in § 2-1208.04(2). To qualify for distributions from the Track Distribution Fund, a racetrack must be a recipient track under § 2-1208.03(5), previously set forth in this opinion.

## INTRASTATE SIMULCASTING

In 1987, the Legislature authorized simulcasting of horseracing in Nebraska on an experimental basis. Simulcasting is a procedure under which a racetrack is permitted to accept wagers on races which are simultaneously televised from other Nebraska racetracks, or, as expressed in § 2-1225(6): "Simulcast shall mean the telecast of live audio and visual signals conducted in the state for the purpose of parimutuel wagering." The Board's Lincoln track is a "simulcast facility," that is, "a facility within the state which is authorized to display simulcasts for parimutuel wagering purposes . . . ." See § 2-1225(7).

Section 2-1227 provides in pertinent part:

(4) Any simulcast between a sending track and receiving track . . . shall result in the combination of all wagers placed at the receiving track with the wagers placed at the sending track so as to produce common parimutuel betting pools for the calculation of odds and the determination of payouts from such pools, which payout shall be the same for all winning tickets, irrespective of whether the wager is placed at a sending track or receiving track.

## FACTUAL BACKGROUND

The salient facts are either stipulated or undisputed.

In August 1987, the Board entered into a simulcast agreement with the Platte County Agricultural Society, which operated the racetrack at Columbus, Nebraska. Under this agreement, the Board, at its Lincoln racetrack, accepted bets on races simulcast from Columbus. Also, the agreement provided that the Board's track and the Columbus track would equally share expenses incurred and revenue generated by the simulcast races. During the 7 days of simulcasting in 1987, the Board accepted $508,553 in wagers at its Lincoln track on simulcast races run at Columbus. During the entire year of 1987, the Board's racetrack in Lincoln accepted a total of $12,034,795 in wagers, which included $11,526,242 bet on races run at the Board's Lincoln track and the $508,553 bet at the Lincoln track on races simulcast from Columbus.

In February 1988, the Board claimed that it was entitled to money from the Track Distribution Fund, since its total annual parimutuel handle for 1987 was $11,526,242, based on $12,034,777 (sic) in total wagers placed at the Board's Lincoln track during 1987 less $508,535 (sic) bet on simulcast races from Columbus. The Racing Commission rejected the Board's claim and refused to make a distribution to the Board from the Track Distribution Fund.

On August 8, 1988, the Board filed a declaratory judgment action in the district court for Lancaster County, seeking judicial declaration that the Board was a recipient track under § 2-1208.03(5), and requested that the Racing Commission be ordered to distribute to the Board the appropriate amount from the Track Distribution Fund.

## DISTRICT COURT'S DECISION

The district court concluded that "the simulcast handle resulting from the simulcast participation by [the Board] and Columbus during the year 1987, should be treated as part of the handle at the sending track (Columbus) during the year 1987." In other words, the district court excluded from the Board's handle all wagers placed at the Board's Lincoln track on races simulcast from Columbus. On that basis, the district court decided that the Board's Lincoln track was "a recipient track for the year 1987 pursuant to Neb.Rev.Stat. §2-1208.03," since the total annual parimutuel handle of the Board's Lincoln track was less than $12 million, and then ordered the Racing Commission "to distribute to [the Board] from the Track Distribution Fund an amount pursuant to Neb. Rev. Stat. §2-1208.04, for the year 1987."

## ASSIGNMENT OF ERROR

In its appeal, the Racing Commission contends that the district court erred by excluding from the Board's total annual parimutuel handle for 1987 all wagers placed at the Board's Lincoln track on simulcast races from the Columbus track.

## STANDARD OF REVIEW

A declaratory judgment action, pursuant to Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1989), is an appropriate method to

obtain judicial construction of a statute. See, *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284 (1989); *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986). "A declaratory judgment action to construe a statute presents a question of law." *Pump & Pantry, Inc. v. City of Grand Island*, 233 Neb. 191, 194, 444 N.W.2d 312, 315 (1989). "In an appeal from a declaratory judgment, the appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court." *State ex rel. Spire, supra* at 265, 445 N.W.2d at 287. See, also, *County of York v. Johnson*, 230 Neb. 403, 432 N.W.2d 215 (1988); *Cornhusker Christian Ch. Home v. Dept. of Soc. Servs.*, 227 Neb. 94, 416 N.W.2d 551 (1987); *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

"When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning." *State v. Crowdell*, 234 Neb. 469, 473-74, 451 N.W.2d 695, 699 (1990). Accord, *State ex rel. Gaddis v. Gaddis*, 237 Neb. 264, 465 N.W.2d 773 (1991); *Video Consultants v. Douglas*, 219 Neb. 868, 367 N.W.2d 697 (1985).

## STATUTORY LANGUAGE IN QUESTION

The fundamental question is: What is the meaning of "total annual parimutuel handle" in § 2-1208.03(5)?

The Racing Commission urges that total annual parimutuel handle means the total of all wagers actually placed at a licensed racetrack, including any wagers made on races simulcast from another location. Conversely, the Board argues that wagers made on simulcast races are properly assignable to the total annual parimutuel handle of the sending track, viz, the track at which the race is actually run.

As mentioned above, the phrase "total annual parimutuel handle" is undefined in Nebraska statutes. However, "total" is ordinarily understood to mean the "entire amount" or "aggregate." Webster's Third New International Dictionary, Unabridged 2414 (1981). "Annual" connotes "yearly" and, as

used in § 2-1208.03(5), refers to the "racing year" or the particular year during which horseraces are run or have been run. Section 2-1208.04(1) indicates that the "racing year" for the purpose of the Track Distribution Fund begins on January 1; consequently, "annual," as used in § 2-1208.03(5) means the calendar year. "Parimutuel" refers to the wagering system authorized in Neb. Rev. Stat. § 2-1207(1) (Reissue 1987):

> Under such system the licensee may receive wagers of money from any person present at such race or racetrack receiving the simulcast race on any horse in a race selected by such person to run first in such race, and the person so wagering shall acquire an interest in the total money so wagered on all horses in such race as first winners in proportion to the amount of money wagered by him or her. . . . The balance remaining on hand [after the required deductions] shall be paid out to the holders of certificates on the winning horse in the proportion that the amount wagered by each certificate holder bears to the total amount wagered on all horses in such race to run first. The licensee may likewise receive such wagers on horses selected to run second, third, or both, or in such combinations as the commission may authorize . . . .

The meaning of "handle," used in § 2-1208.03(5), raises a question for which there is a readily available answer. Even to those who are not among the cognoscenti of horseracing, handle has a standard meaning in everyday usage for wagering: "the total amount of money bet on a race, game, or event or over a period of time (as a season)." Webster's Third New International Dictionary, Unabridged 1027 (1981). Based on the foregoing, we conclude that the phrase "total annual parimutuel handle," used in § 2-1208.03(5), means the aggregate dollar amount of wagers accepted over the course of a calendar year.

Adoption of the preceding definition, however, does not end our analysis, because total annual parimutuel handle is meaningful only when calculated in reference to something else, such as a particular track or tracks, particular types of races, or particular types of wagers. In other words, total annual parimutuel handle could refer to wagers placed *at* a track or

placed *on* some race which occurs at another site. In the present case, the reference point is supplied by § 2-1208.03(5), which refers specifically to "a racetrack."

By limiting the focus to a racetrack, instead of types of races run or types of wagers accepted, the Legislature has expressed its intent that the aggregate dollar amount of wagers accepted over the course of a calendar year at a racetrack shall be used in determining whether the racetrack qualifies for money from the Track Distribution Fund. Under § 2-1208.03(5), all wagers placed at the track are aggregately considered for the purpose of the statute, whether such wagers are placed on races occurring at the site where the wagers are placed or are placed on races simulcast to the site where wagers are placed.

We are aware that § 2-1227(4) requires "the combination of all wagers placed at the receiving track with the wagers placed at the sending track." However, § 2-1227(4) provides that the combination of wagers is for the limited purpose of "the calculation of odds and the determination of payouts." Under the general principle of statutory construction that an expressed object of a statute's operation.excludes the statute's operation on all other objects unmentioned by the statute, the combination of wagers under § 2-1227(4) is restricted to the purpose or object expressed in the statute, i.e., calculation of odds in a race and determination of payments from pools resulting from parimutuel betting on the race. See, *Nebraska City Education Assn. v. School Dist. of Nebraska City*, 201 Neb. 303, 267 N.W.2d 530 (1978) (expressio unius est exclusio alterius, the expression of one thing is the exclusion of another; when a statute specifies the object of its operation, the statute excludes its operation on every object not expressly mentioned by the statute); *Galstan v. School Dist. of Omaha*, 177 Neb. 319, 128 N.W.2d 790 (1964); *Starman v. Shirley*, 162 Neb. 613, 76 N.W.2d 749 (1956); *Harrington v. Grieser*, 154 Neb. 685, 48 N.W.2d 753 (1951).

Therefore, the Racing Commission must include and use all wagers accepted at the Board's Lincoln track to determine whether the Lincoln track qualifies as a recipient track under § 2-1208.03(5). Because the Board accepted a total of $12,034,795 in wagers during the 1987 racing year, the Board's

Lincoln racetrack did not qualify as a recipient track under § 2-1208.03(5) for 1987 and, therefore, is ineligible to receive money from the Track Distribution Fund for 1987. Accordingly, the district court's judgment is reversed, and this cause is remanded for entry of judgment in the district court in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTION.