WARREN DREW AND DEBBIE DREW, APPELLANTS, V. WILMA WALKUP, PERSONAL REPRESENTATIVE OF THE ESTATE OF DONALD WALKUP, DECEASED, JACKIE ROHDE, TAFT LARSEN, AND RODNEY LARSEN, APPELLEES.

482 N.W.2d 187

Filed June 26, 1992.   No. S-91-666.

James D. Sherrets and Karl D. Vogt, of Sherrets, Smith & Gardner, for appellants.

Joseph C. Byam, of Byam & Byam, for appellees Walkup and Larsen.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Warren and Debbie Drew appeal a district court order finding that they acquired no ownership interest in real estate which they claim to have purchased under a written "rent-to-own" contract. We affirm the findings and order of the district court for Douglas County.

The Drews testified that the alleged written agreement was lost in a fire that partially destroyed the residence located at 834 North 78th Street in Omaha.

The appellants set forth as error the trial court's rulings that

(1) hearsay testimony of an unavailable witness was inadmissible, (2) certain testimony of two witnesses was irrelevant, (3) no contract for the sale of the property existed, and (4) appellants were not entitled to damages.

The statute of frauds provides that an agreement for the sale of land is void in the absence of a written memorandum signed by the vendor. *Krueger v. Callies*, 190 Neb. 376, 208 N.W.2d 685 (1973). A party seeking to recover upon a lost instrument has the burden of proving the former existence, execution, delivery, theft or loss, and contents of the instrument by clear and convincing evidence. *In re Estate of Miller*, 231 Neb. 723, 437 N.W.2d 793 (1989). Secondary evidence of the contents of a writing is generally admissible where it is shown that the original writing has been lost or destroyed. *State ex rel. Mercurio v. Board of Regents*, 213 Neb. 251, 329 N.W.2d 87 (1983).

The Drews were the occupants of a residence at 834 North 78th Street from 1983 until the house was damaged by fire on December 28, 1990. Following the fire and after being told to vacate the residence, the Drews filed a petition in the district court for Douglas County, seeking a declaratory judgment, or a determination of their legal rights to the property, injunctive relief prohibiting the transfer or encumbrance of the property, and an order quieting title in them. The Drews named as defendants Wilma Walkup, personal representative of the estate of Donald Walkup, Royal Insurance Service Corp., Jackie Rohde, Taft Larsen, and Rodney Larsen. The court dismissed the action against Royal Insurance Service Corp. before trial. Rohde neither answered the petition nor made an appearance.

An action for declaratory judgment under the provisions of Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1989 & Supp. 1991) is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Union Ins. Co. v. Bailey*, 234 Neb. 257, 450 N.W.2d 661 (1990). The test is whether, in the absence of a prayer for declaratory judgment, the issues presented should be properly disposed of in an equitable as opposed to a legal action. See *Chadron Energy Corp. v. First Nat. Bank*, 221 Neb. 590, 379 N.W.2d 742

(1986). The Drews also requested injunctive relief and quiet title relief. Injunctive and quiet title lawsuits are both equity actions. See, *State v. Melcher, ante* p. 592, 483 N.W.2d 540 (1992); *Mack v. Luebben*, 215 Neb. 832, 341 N.W.2d 335 (1983). In an equity action, an appellate court reviews the record de novo. See *State v. Melcher, supra*.

In such review, the appellate court reaches a conclusion independent of the factual findings of the trial court; however, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstance that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

As to questions of law, an appellate court has the obligation to reach its own independent conclusions. *Id*.

The evidence shows that the North 78th Street residence was purchased by Donald Walkup in 1966 from the defendant Jackie Rohde. In May 1989, Rohde executed and delivered a warranty deed conveying the property to Donald Walkup.

Donald Walkup died in November 1990, a few weeks before fire partially destroyed the residence in question. After the fire, counsel for the personal representative of Walkup's estate notified the Drews that they were tenants who occupied the house pursuant to an oral month-to-month lease. The Drews were directed to vacate the residence so the estate could repair and sell it. Defendant Taft Larsen was hired as a general contractor to secure the house after the fire. The defendant Rodney Larsen had agreed to purchase the property.

The Drews testified that they were not mere tenants but, rather, purchasers of the property pursuant to a "rent-to-own contract" or a "land contract" entered into in 1983 by them and Donald Walkup. They testified their only copy of the written document was destroyed in the fire. In support of their claim that the alleged written contract existed, both of the Drews testified that they had contacted Donald Walkup initially about occupying the house when he indicated an interest in selling it. The Drews said they made it clear that they were in no financial position to buy a house, whereupon Walkup offered them a "deal." They testified that they were to live in the house for at

least 5 years and that they were to pay Walkup monthly on a rent-to-own basis. The Drews testified the purchase price was $18,000, with monthly payments of $225, of which $150 would be applied to principal and $75 to taxes and insurance. There was no testimony that the Drews would pay interest on the principal from time to time remaining unpaid. The Drews testified that the downpayment would be in the form of "sweat equity," or $4,000 worth of repairs and improvements the Drews would make to the residence. There appears to be no explanation as to how the $4,000 in sweat equity would benefit Walkup if the Drews were purchasing the property. They said Walkup was to purchase the insurance, but it would be "for [their] mutual protection."

The Drews testified that the alleged agreement between them and Walkup was reduced to writing, dated, and executed by Warren Drew, Debbie Drew, and Donald Walkup. Warren Drew, Sr., Warren's father, signed the agreement as a witness, according to the Drews. Walkup kept the original document, and Warren and Debbie Drew received a copy, the Drews testified.

Other than the Drews' testimony, there was no testimony from any witness who claimed to have seen the alleged written agreement. Of the four people the Drews claim took part in the execution of the alleged agreement, two, Donald Walkup and Warren Drew, Sr., were deceased at the time of the trial.

The Drews testified that they made their monthly payments for 7 years either in cash or money order paid directly to Walkup, or in work done at the Walkup personal residence in lieu of payments. Warren testified that Debbie kept track of all the payments made. Debbie offered no testimony regarding any records of monthly payments.

The defendants offered into evidence a receipt for payment which had been filled in and signed by Donald Walkup. It was dated "10-4 1990" and showed that a payment of $225 had been made. It was marked "For *Rent* of *September.*" (Emphasis supplied.) Warren Drew testified that *after* he received the receipt from Walkup, he gave it to Debbie Drew, *who, sometime thereafter*, marked the receipt "For Cash for House Payment." After the Drews' petition was filed in the district

court, Debbie Drew put her initials, "D.D.," on the payment receipt where she had earlier altered it. A photocopy of the receipt attached to the petition does not carry the initials "D.D.," although it does reflect the alterations.

To explain why Debbie Drew would write on the receipt after obtaining it from Walkup, Warren Drew testified that "[o]rdinarily she made marks like that on the receipts for her own records because she kept track of all those things." No explanation was offered as to why this document was not with any other alleged documents regarding the house when the house burned down, or why the September 1990 receipt was the only such house document to survive the fire. The Drews offered into evidence a bag of ashes they claimed came from that area of the house where the alleged land contract was stored. Warren Drew admitted that he could not say that the ashes contained the remains of the alleged written agreement between the Drews and Donald Walkup.

The defendants offered into evidence Donald Walkup's federal tax returns for the years 1984 through 1990. His 1985 and 1987 through 1990 tax returns all reflect that Walkup reported rental income from the North 78th Street residence. From the rental income, Walkup deducted expenses, and he calculated depreciation on the residence. Walkup's 1984 and 1986 tax returns also show such rental income and deductions, although the address of the rental property is not specifically entered on the returns. There is no address other than 834 North 78th Street indicated as rental property on any of Walkup's tax returns.

The defendants also introduced into evidence several insurance documents showing that Walkup had purchased insurance for a non-owner-occupied rental property at the North 78th Street address. The insurance coverage was for fire, liability, and loss of rent. Donald Walkup is the only named insured on the policy. No secondary insured or lienholder is named on the policy.

At the close of evidence, the Drews moved for a directed verdict, which was overruled. The court found for the defendants and dismissed the Drews' petition.

The appellants' first three assignments of error are

concerned with the admissibility of evidence at the trial.

## FIRST ASSIGNED ERROR

In their first assignment of error, the Drews claim that the trial court erred in failing to admit the testimony of Mary Rodgers, Warren Drew's mother. Rodgers was asked what her deceased husband, Warren Drew, Sr., had told her about the rent-to-own contract. This hearsay evidence was offered in an effort to establish that Warren Drew, Sr., signed the alleged agreement and that a contract had existed. The Drews argue that even though the testimony was hearsay it was admissible under the exceptions to the hearsay rule. See, Neb. Rev. Stat. §§ 27-803(22) and 27-804(2)(e) (Reissue 1989). However, under both sections of the statutes, such statement may not be admitted under these exceptions unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant. See §§ 27-803(22) and 27-804(2)(e).

The Drews contend that their deposition testimony was sufficient to put the defendants on notice of their intention to offer Warren Drew, Sr.'s hearsay statement into evidence at the trial. The Drews' depositions are not in the record. It is not enough that the adverse party is aware of an unavailable declarant's statement; *the proponent of the evidence must provide notice* to the adverse party of his intention to use the statement in order to take advantage of the hearsay exception in § 27-804(2)(e). *State v. Boppre,* 234 Neb. 922, 453 N.W.2d 406 (1990). Because the Drews failed to give notice of their intention to introduce an unavailable declarant's hearsay statement into evidence, they were precluded from taking advantage at trial of the hearsay exception. The Drews' first assignment of error is without merit.

## SECOND ASSIGNED ERROR

For their second assignment of error, the Drews claim the trial court abused its discretion when it found that the testimony of two witnesses was irrelevant.

Warren Drew testified that he had received a letter after the

fire from Joseph C. Byam, attorney of Walkup's personal representative, in which Byam told the Drews that they were month-to-month tenants. Drew also testified that before filing the Drews' petition in the district court, the Drews had not contacted either Wilma Walkup or Byam to assert their alleged ownership rights.

Drews' counsel asked the following of Warren Drew during redirect examination: "Receiving this letter, did you have any reason to doubt Mr. Byam's authority or knowledge on the topic?" Defense counsel objected to the question as leading. The court ruled the evidence to be irrelevant. The Drews offered to prove that they relied upon Byam's expertise and knowledge of their rights regarding the property. The court again ruled the testimony to be irrelevant.

Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence, or the evidence tends to establish a fact from which the existence or nonexistence of a fact in issue can be directly inferred. *Blanchette v. Keith Cty. Bank & Trust Co.*, 231 Neb. 628, 437 N.W.2d 488 (1989).

As the trial court pointed out, Byam was not the Drews' attorney. The fact that they may have relied upon anything he may have told them does not make it more or less probable that a contract for the sale of the house existed. The offered testimony of Warren Drew was properly excluded as irrelevant.

The testimony of the second witness in question was that of Wilma Walkup, personal representative of Donald Walkup's estate. She was called by the Drews to testify on rebuttal at the close of the defendants' case. She was asked: "And at the time you knew Mr. Walkup approximately six years, he never talked to you *about raising the rent* at the Drew house?" (Emphasis supplied.) The court ruled that this potential evidence was not proper rebuttal evidence and was irrelevant. The Drews offered to prove that Wilma Walkup would testify that she and Donald Walkup had never talked about raising the rent. Evidence of whether Donald Walkup ever discussed with Wilma Walkup the possibility of raising the Drews' rent does not make it more or less probable that a written contract for the sale of the house

existed. The offered testimony of Wilma Walkup was properly excluded. The appellants' second assignment of error is without merit.

### THIRD ASSIGNED ERROR

For their third assignment of error, the Drews claim the trial court erred in concluding that the plaintiffs failed to meet their burden of proving by clear and convincing evidence that a written agreement for the sale of the house existed between the Drews and Donald Walkup.

The defendants offered into evidence tax returns for the entire period of time the Drews occupied the house. Those tax returns reported the North 78th Street residence as rental property solely owned by Donald Walkup. Insurance forms also designated the house as rental property and named Donald Walkup as the sole insured. The payment receipt, although altered by Debbie Drew, reflects that Walkup considered that the monthly payment for September 1990 was rent and not a house payment. In our de novo review, we find Donald Walkup's actions and documents refute the Drews' claim that the North 78th Street residence was sold to the Drews by written contract in 1983.

The only evidence offered by the Drews to support their assertions that a written agreement existed was their own testimony and a bag of ashes. Because the trial court held against the Drews, it is obvious that the trial court did not find the Drews' testimony to be credible. The trial court saw the Drews while they testified and was in the best position to determine their credibility. When the evidence is in conflict, an appellate court may give weight to the circumstance that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. Upon our de novo review of the record, we conclude that the Drews failed to prove by clear and convincing evidence that they have any ownership interest in the real estate located at 834 North 78th Street in Omaha or that there ever was a written agreement between them and Donald Walkup for the sale and purchase of the property.

The Drews' third assignment of error is without merit.

Because of our findings herein, the Drews' fourth assignment of error, regarding damages, is moot.

Dismissal of the Drews' petition by the district court for Douglas County is affirmed.

AFFIRMED.