LARRY R. BOYLES AND OLGA J. BOYLES, APPELLANTS, V. GARY J.
HAUSMANN AND RENEE S. HAUSMANN, HUSBAND AND WIFE, ET
AL., APPELLEES.

517 N.W.2d 610

Filed June 24, 1994.   No. S-92-204.

Nile K. Johnson, of Johnson & Mock, for appellants.

Gregory P. Drew for appellees.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

This appeal arises from an action filed by appellants, Larry R. Boyles and Olga J. Boyles, seeking to declare that a restrictive covenant on their real property is invalid. After a bench trial the district court entered an order declaring the covenants valid. The Nebraska Court of Appeals reversed the decision of the district court. *Boyles v. Hausmann*, 2 Neb. App. 388, 509 N.W.2d 676 (1993). We modify and affirm the decision of the Court of Appeals.

On August 14, 1977, appellants purchased Lot 18 of the Pioneer Hills Subdivision. The Pioneer Hills Subdivision is located at Section 7, Township 17 North, Range 12 East of the 6th P.M. in Washington County, Nebraska. At the time of the purchase, there were covenants on the subdivision lots which restricted the use of the land. These covenants had been established by the original owners of the lots within the subdivision.

Generally, the covenants address the following: (1) limiting residential buildings to one single-family residence per lot; (2) limiting the size and number of attached garages or carports; (3) prohibiting the building of a residence on a plot smaller than the

original lot size; (4) prohibiting noxious or offensive activities; (5) prohibiting trailers, tents, shacks, junk cars, or other temporary structures on a lot; (6) setting minimum size of ground floor living space in residences; (7) restricting the extent of grading the land; (8) restricting type and number of various animals permitted on a lot; (9) limiting the use, size, and number of outbuildings on a lot; (10) prohibiting preconstructed dwellings' being moved to a lot; and (11) requiring preapproval of all construction plans.

The covenants also provided that

> [t]hese covenants, restrictions and conditions shall run with the land and continue until January 1, 1983, after which time they shall be automatically extended for successive periods of five years, unless an instrument signed by a majority of the then owners of said land shall have been recorded in the office of the County Clerk of Washington County, Nebraska, agreeing to change same in whole or in part.

In February 1984, the original covenants were amended by a majority of the lotowners. Appellants voted in favor of these changes. The following covenants were changed at that meeting: (5), permitting recreation vehicles to be parked on lots on which the resident resides; (8), changing the type and number of animals which may be kept on the lots; (9), changing the size of outbuildings permitted on lots of a particular size; (10), excepting new factory-built homes from the prior restriction; and (11), requiring that all building plans be submitted and approved by Pioneer Hills Association officers.

According to the February 1984 amending instrument, the covenants were to

> continue until January 1, 1988, after which time they shall be automatically extended for successive periods of five years, unless an instrument signed by a majority of the then owners of said land shall have been recorded in the office of the County Clerk of Washington County, Nebraska, agreeing to change same in whole or in part.

Amendments were made again in February 1990. Appellants also voted in favor of these amendments. The amendments included the following: (2), changing the restriction on garages

and carports; (6), changing square-foot minimum for residential ground floor space; and (9), changing size limitations on outbuildings. The document also included "Water Use Regulations." These regulations generally involve defining the interests of some lotowners in a jointly owned water system, establishing the fees associated with such interests, providing insurance for the system, regulating the maintenance of the system, and outlining the permissible uses of water from the system.

Finally, the February 1990 instrument provided that

[t]hese covenants, water use regulations, restrictions and conditions shall run with the land and continue until January 1, 1995, after which time they shall be automatically extended for successive periods of five years, unless an instrument signed by a majority of the then owners of said land shall have been recoded [sic] in the office of the County Clerk of Washington County, Nebraska, agreeing to change same in whole or in part.

On August 24, 1990, a majority of the landowners changed the covenants to include the covenant which is the source of the present dispute. The disputed covenant prohibits the building of residences or other buildings within 120 feet of Pioneer Hills Road (the county road which runs through the subdivision). This covenant was added to an existing covenant, which prohibited residential structures "on any building lot which is smaller in area than the original plotted number on which it is erected." Appellants did not agree to the disputed covenant and did not sign the new instrument.

Appellants filed a declaratory judgment action seeking to have the district court declare the August 1990 covenant invalid. In their petition, appellants contend that as a result of the new covenant, the value of their lot has substantially decreased. Appellants state that because of the size of Lot 18 and an existing pipeline and easement across the lot, the disputed covenant makes the lot unsuitable for building.

After a bench trial, the district court found generally for appellees. Appellants timely filed an appeal to the Court of Appeals.

In the Court of Appeals, appellants argued that the

covenants should be declared invalid because (1) although existing covenants could be changed, new covenants could not be added; (2) appellants detrimentally relied on the fact that when they purchased Lot 18, no setback restriction existed; and (3) the 120-foot setback does not apply uniformly to all of the lots in the subdivision.

The Court of Appeals, finding plain error in the record, examined the February 1990 covenant and found that it did not authorize any changes until after 1995. Accordingly, the Court of Appeals held that the August 1990 covenant was invalid and reversed the decision of the district court. *Boyles v. Hausmann*, 2 Neb. App. 388, 509 N.W.2d 676 (1993). We granted appellees' petition for further review.

An action for declaratory judgment under the provisions of Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1989, Cum. Supp. 1992, & Supp. 1993) is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. The test is whether, in the absence of the prayer for declaratory judgment, the issues presented should properly be disposed of in an equitable as opposed to a legal action. *Drew v. Walkup*, 240 Neb. 946, 486 N.W.2d 187 (1992). See *Buhrmann v. Buhrmann*, 231 Neb. 831, 438 N.W.2d 481 (1989). In the present case, the action to declare a restrictive covenant invalid and unenforceable is essentially equitable in nature. See, *Northwestern Bell Tel. Co., supra* (stating that an action seeking to declare a statute unconstitutional is an equitable action); *Micek v. Metzger*, 228 Neb. 437, 422 N.W.2d 791 (1988).

In an equity action, the appellate court reviews the record de novo. *Drew, supra.* In such a review, the appellate court reaches conclusions independent of the factual findings of the trial court, provided, where credible evidence is in conflict, the reviewing court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994); *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 478 N.W.2d 270 (1992); *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284 (1989); *Knudtson v. Trainor*, 216 Neb. 653, 345

N.W.2d 4 (1984). As to questions of law, the appellate court is obligated to reach its conclusions independent of the determinations of the trial court. *How, supra*; *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994); *National Am. Ins. Co. v. Continental Western Ins. Co.*, 243 Neb. 766, 502 N.W.2d 817 (1993); *Drew, supra*; *State Bd. of Ag., supra*; *Northwestern Bell Tel. Co., supra*.

Appellees contend that the Court of Appeals erred in interpreting the covenant agreement and finding that the covenant agreement could not be amended until 1995. Appellees contend that the covenant provision which permits changes is ambiguous and that the action must be remanded for further proceedings in the district court.

Restrictive covenants are to be construed so as to give effect to the intention of the parties at the time they agreed to the covenants. *Breeling v. Churchill*, 228 Neb. 596, 423 N.W.2d 469 (1988); *Micek, supra*. If the language is unambiguous, the covenant shall be enforced according to its plain language, and the covenant shall not be subject to rules of interpretation or construction. *Baltes v. Hodges*, 207 Neb. 740, 301 N.W.2d 92 (1981); *Lakeland Prop. Owners Ass'n v. Larson*, 121 Ill. App. 3d 805, 459 N.E.2d 1164 (1984). See, also, *Knudtson, supra*; *Ross v. Newman*, 206 Neb. 42, 291 N.W.2d 228 (1980). An ambiguity exists when the instrument at issue is susceptible of two or more reasonable but conflicting interpretations or meanings. Moreover, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993) (quoting *Crowley v. McCoy*, 234 Neb. 88, 449 N.W.2d 221 (1989)).

The relevant covenant provision provides that

[t]hese covenants, water use regulations, restrictions and conditions shall run with the land and continue until January 1, 1995, after which time they shall be automatically extended for successive periods of five years, unless an instrument signed by a majority of the then owners of said land shall have been recoded [sic] in the office of the County Clerk of Washington County,

Nebraska, agreeing to change same in whole or in part.

Appellees contend that the word "unless" causes the provision to be susceptible of at least three conflicting meanings. On the contrary, we find that the word "unless" does not render the provision ambiguous. The "unless" clause modifies the immediately preceding clause regarding automatic extension. Thus, the only reasonable reading of the provision is that the term will be automatically extended unless changes are made by a majority.

After thorough review of the decision rendered by the Court of Appeals and our own independent review of the record and the relevant law, we find that the analysis and conclusion of the Court of Appeals are correct with regard to the meaning of the plain language of the covenant agreement. We therefore find it unnecessary to restate the discussion of the Court of Appeals. See *Boyles v. Hausmann*, 2 Neb. App. 388, 509 N.W.2d 676 (1993).

However, we do find it necessary to consider whether the Court of Appeals should have addressed the primary issue raised by appellants: whether a majority of the lotowners may adopt covenants which are new and different from the existing covenants and which are binding on all of the lotowners.

Declaratory judgments are

> available when a present actual controversy exists and all interested persons are parties to the proceedings, and then only when a justiciable issue exists for resolution. . . . A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.

*Koenig v. Southeast Community College*, 231 Neb. 923, 926, 438 N.W.2d 791, 794 (1989). Accord, *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989); *Ellis v. County of Scotts Bluff*, 210 Neb. 495, 315 N.W.2d 451 (1982); *Berigan Bros. v. Growers Cattle Credit Corp.*, 182 Neb. 656, 156 N.W.2d 794 (1968). A declaratory judgment action cannot be used to determine the legal effects of a set of facts which are future, contingent, or uncertain. At the time that the declaration is sought, there must be an actual justiciable issue

from which the court can declare law as it applies to a given set of facts. *Mullendore, supra* (quoting *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981)); *Ellis, supra*. If, however, an actual dispute as to the parties' legal rights is demonstrated, a violation of those rights is not a condition precedent to the availability of declaratory relief. See, *Hickory Point v. Anne Arundel County*, 316 Md. 118, 557 A.2d 626 (1989); *Neidhart v. Areaco Investment Company*, 514 S.W.2d 831 (Mo. App. 1974).

As discussed above, the Court of Appeals correctly concluded that the covenant agreement did not authorize amendments until after January 1, 1995. Nevertheless, we find that the issue regarding whether a majority of the lotowners may adopt a new covenant presents an actual controversy between the parties, for which the requested relief will provide a remedy. The record in the district court and the Court of Appeals demonstrates that the likelihood that appellees will attempt to adopt a similar covenant on or after January 1, 1995, is both imminent and certain. Additionally, the record reflects that the disputed covenant has adversely affected appellants' recent attempts to sell Lot 18. In the context of the instant case, this issue is specifically defined, the affected parties are identified and are parties to the proceeding, and the issue is capable of judicial resolution. We therefore find that it is appropriate for this court to address whether, pursuant to the covenant agreement, a majority of the lotowners may adopt new covenants which restrict the use of all lots within the subdivision. See *How v. Baker*, 223 Neb. 100, 388 N.W.2d 462 (1986) (considering whether plaintiffs were entitled to declaratory judgment regarding proposed future amendments to existing restrictive covenants).

Restrictive covenants are to be construed in connection with the surrounding circumstances at the time that the covenants were made to give effect to the intention of the parties. *Breeling v. Churchill*, 228 Neb. 596, 423 N.W.2d 469 (1988); *Micek v. Metzger*, 228 Neb. 437, 422 N.W.2d 791 (1988); *Baltes v. Hodges*, 207 Neb. 740, 301 N.W.2d 92 (1981); *Hogue v. Dreeszen*, 161 Neb. 268, 73 N.W.2d 159 (1955); *Caughlin Homeowners Ass'n v. Caughlin Club*, 849 P.2d 310 (Nev.

1993); *Lakeland Prop. Owners Ass'n v. Larson*, 121 Ill. App. 3d 805, 459 N.E.2d 1164 (1984); *Van Deusen v. Bussmann*, 343 Mo. 1096, 125 S.W.2d 1 (1939). When asked to consider a restrictive covenant, a court should keep in mind that restrictive "covenants which restrict the use of land are not favored by the law, and, if ambiguous, they should be construed in a manner which allows the maximum unrestricted use of the property." *Knudtson v. Trainor*, 216 Neb. 653, 655, 345 N.W.2d 4, 6 (1984). Accord, *Ross v. Newman*, 206 Neb. 42, 291 N.W.2d 228 (1980); *Egan v. Catholic Bishop*, 219 Neb. 365, 363 N.W.2d 380 (1985); *Larson, supra.* If the language is unambiguous, the covenant should be enforced according to its plain language. *Larson, supra.* See, also, *Knudtson, supra*; *Ross, supra.* If a restrictive covenant agreement also contains a provision which provides for future alteration, the language employed determines the extent of that provision. *Larson, supra.* Further, under no circumstances shall restrictions on the use of land be extended by mere implication. *Van Deusen, supra.*

In the instant case, the provision of the covenant agreement which authorizes changes provides that

> [*t*]*hese covenants*, water use regulations, restrictions and conditions shall run with the land and continue until January 1, 1995, after which time *they* shall be automatically extended for successive periods of five years, unless an instrument signed by a majority of the then owners of said land shall have been recoded [sic] in the office of the County Clerk of Washington County, Nebraska, agreeing *to change same* in whole or in part.

(Emphasis supplied.)

In light of the principles set forth above, we find that the unambiguous language of this provision authorizes a majority of the lotowners to make changes to existing covenants, but the provision does not authorize a majority to add new and different covenants. In the covenant agreement, the change provision follows the itemization of the land-use covenants, and the provision refers to "these covenants" and provides that "they" shall be automatically extended, unless the majority changes the "same." The references throughout this provision refer only to the previously listed covenants. We find that there

is no other reasonable reading of this provision and that the provision does not authorize a majority of lotowners to bind all lotowners to new and different covenants which restrict the use of land. See, *Larson, supra* (discussing a provision nearly identical to that presented in this case); *Caughlin Homeowners Ass'n, supra* (adopting the rationale of *Larson*).

Appellees rely on a decision by this court in *How v. Baker, supra,* and argue that amendments which are made to existing covenants pursuant to authority granted in the original covenant agreement are enforceable. Although the *How* case is factually similar to the case at bar, the court in *How* did not address the issue with which we are presented in this case.

In *How,* the plaintiffs had filed a declaratory judgment action, seeking a declaration that a proposed amendment to the original covenants was invalid. The issues raised by the plaintiff involved an amendment regarding assessments on the real estate located in the subdivision. The first issue considered on appeal was whether the original covenants ran with the land and whether plaintiffs had adequate notice of such covenants. The second issue was whether the board of directors of the homeowners' association, acting on behalf of the association, was authorized to make amendments to the original covenants. The court did not consider whether the proposed amendment was a change of an existing covenant, or whether the association had the authority to adopt new and different covenants without the unanimous consent of the lotowners.

The statement of facts provided in the *How* opinion does not indicate that the proposed amendment at issue was a new and different covenant. It is true that courts shall enforce changes to original covenants when such changes are permitted by the covenant agreement. We emphasize, however, that such changes may not exceed the scope and extent of that authority to make changes as set forth in the covenant agreement. We find that our decision in the instant case is not inconsistent with the *How* decision, nor is our decision controlled by *How*.

The issue then becomes whether the disputed covenant constitutes a new and different covenant when compared with the existing covenants.

The disputed covenant provides that no building may be

erected within 120 feet of Pioneer Hills Road. This covenant was added to an existing covenant, which prohibited residential structures from being built "on any building lot which is smaller in area than the original plotted number on which it is erected." The existing covenant to which the disputed covenant was added did not address where on the lot a building could be erected or how far from the lot boundaries a building could stand. We find that compared with this existing covenant, the disputed covenant is new and different.

Similarly, the disputed covenant is new and different from the other covenants which existed when the disputed covenant was adopted. The other covenants involved the size of a residence and the size of its floor plan, limited the size of garages, prohibited nuisances, prohibited temporary shelters, restricted the type and number of animals, limited the number of outbuildings, and required preapproval of construction plans. We find that none of these existing covenants involved setbacks, nor did such covenants restrict in any way the location of a building on a lot.

The law will not subject a minority of landowners to unlimited and unexpected restrictions on the use of their land merely because the covenant agreement permitted a majority to make changes to existing covenants. Although we will enforce those restrictions of which a landowner has notice, we will not hold that a property owner is bound to that of which he does not have notice. There is nothing in the existing covenants which would have put appellants on notice that their land would one day be subject to a setback limit. See, *Egan v. Catholic Bishop*, 219 Neb. 365, 363 N.W.2d 380 (1985) (holding that a landowner may not later seek to enforce a restrictive covenant, if prior to purchase he knew of a continuing violation of the covenant); *Caughlin Homeowners Ass'n v. Caughlin Club*, 849 P.2d 310 (Nev. 1993) (stating that there was nothing in the existing covenant agreement which alerted plaintiff that the defendant could change the covenants to include assessment fees against plaintiff); *Lakeland Prop. Owners Ass'n v. Larson*, 121 Ill. App. 3d 805, 459 N.E.2d 1164 (1984) (stating that courts should not enforce covenant changes of which the owner did not have reasonable notice at the time he acquired the

land).

Finally, we address appellees' estoppel argument. Appellees appear to offer two different theories that appellants are estopped from challenging the disputed covenant. First, appellees argue that appellants, by their previous actions, are estopped from challenging the validity of the "covenant which provides for amendment by majority action." Brief for appellees at 3. Broadly accepting appellees' estoppel argument, we find that its premise is flawed. Appellants do not challenge the validity of the covenant provision which permitted changes; rather, appellants challenge the extent of the changes permitted pursuant to that provision. As stated above, we acknowledge the validity of a provision which permits change; however, we hold that the disputed covenant exceeded the extent and scope of the changes permitted by the covenant agreement.

Second, appellees contend that appellants accepted the 1984 and 1990 changes to the original covenant agreement, and thus, appellants waived their right to challenge the validity of the disputed covenant. This theory is similarly flawed. Unlike the disputed covenant, the prior changes did not constitute new and different covenants. The changes made by a majority of the lotowners in 1984 and 1990 were changes made to existing covenants, not the addition of new covenants restricting the use of the land.

In summary, we find that (1) the provision of the February 1990 covenant agreement did not authorize changes by a majority of the lotowners until after January 1, 1995; (2) although a majority could adopt changes to the original covenants, a majority did not have the authority to adopt new and different covenants which restricted the use of the land; and (3) appellants were not estopped from asserting their right to challenge the validity of the disputed covenant.

We therefore affirm, as modified herein, the decision of the Court of Appeals reversing the decision of the district court.

AFFIRMED AS MODIFIED.

BOSLAUGH, J., participating on briefs.

WRIGHT, J., not participating.