REQUESTED BY: Annette L. Harmon, Executive Director, Board of Public Accountancy
You have asked several questions regarding the establishment of a volunteer enforcement committee. You have informed us that the Board of Public Accountancy currently has an enforcement committee made up only of Board members. The Board is considering creation of an enforcement committee consisting of one or two Board members and up to ten members of the CPA profession. You ask the following questions:
 1. Does the Board have the authority to create an Enforcement Committee that includes members of the CPA profession whose participation on the committee is completely voluntary?
 2. If so, does the Board have the authority to pay a per diem and expenses for the volunteer members' participation, either to the volunteer or to his/her firm?
 3. If the Enforcement Committee utilized outside members of the profession, what would be the Board's liability for these individuals' actions?
 4. Would payment to the firm, rather than the individual, make a difference in liability?
1. Authority to Create A Volunteer Enforcement Committee.
The Public Accountancy Act includes no express statutory authority for an enforcement committee. Neb. Rev. Stat. § 1-105 to 1-171(1997 and Supp. 2000). Neb. Rev. Stat. § 1-109(2) provides authority for the Board to employ an executive director and other personnel. However, we assume from your opinion request letter that you do not intend to hire outside members of the CPA profession as employees or enter into a contract with them as independent contractors. Neb. Rev. Stat. § 1-113
provides specific authority for an advisory committee to advise the Board regarding educational requirements. § 1-113(2) further provides that "the board may also consult the advisory committee on any other issues which it deems appropriate." We note the Board could consult this existing advisory committee on enforcement issues.
The authority to create a separate enforcement committee consisting primarily of non-Board members is less clear. It is a general principle of statutory interpretation that mention of one thing implies exclusion of another. Stated another way, the fact that the Legislature expressly gave the Board authority to create an advisory committee regarding educational requirements at Neb. Rev. Stat. § 1-113 may well imply that the Legislature did not intend that the Board have the authority to establish other committees of non-board members. State Board of Agriculture v. State Racing Comm., 239 Neb. 762, 478 N.W.2d 270 (1992).
We also note that as a general rule, administrative bodies have only that authority specifically conferred upon them by statute or by construction necessary to achieve the purpose of the relevant act. In Re Application A-16642, 236 Neb. 671, 463 N.W.2d 591 (1990). The Nebraska Supreme Court stated therein that the term "`necessary', . . . may mean anything from `indispensable' to `convenient'." Id. at 699,463 N.W.2d at 609. Looking at the purpose of the Board as stated in Neb. Rev. Stat. § 1-105.01 with regard to "assuring the competency of persons regulated" and disciplining those who do not meet professional standards it seems reasonable that the Board may find it necessary to call on volunteers to assist and advise it in carrying out its duties. See Op. Att'y Gen. No. 86004, in which this office concurred that the Board had the authority to establish a quality review program in which volunteers would assist. See also Op. Att'y Gen. No. 93069, in which this office concluded that constitutional agencies such as the Department of Education could create committees.
However, the answer to your question also depends in part upon the functions or duties to be performed by the volunteer members of the proposed enforcement committee.
 In general, administrative officers and bodies cannot alienate, surrender, or abridge their powers and duties, and they cannot legally confer on their employees or others authorities and functions which under the law may be exercised only by them or by other officers or tribunals. Accordingly, in the absence of permissive constitutional or statutory provisions, administrative officers and agencies cannot delegate to a subordinate or another powers and functions which are discretionary or quasi-judicial in character, or which require the exercise of judgment; and subordinate officials have no power with respect to such duties. On the other hand, the general rule is that mere ministerial functions may be delegated.
73 C.J.S. Public Administrative Law and Procedure, § 56 at 513-514 (1983). Therefore, the Board would be unable to delegate any decision making or discretionary duties to the volunteers on an enforcement committee and could only delegate ministerial functions or use the volunteers in an advisory capacity. For example, the Nebraska Supreme Court has held that the Board's authority to execute an order of revocation cannot be delegated to its executive director. Bohling v. State Board of Public Accountancy, 243 Neb. 666, 501 N.W.2d 714 (1993).
In summary, the use of volunteers to advise the Board in its enforcement duties or assist with purely ministerial tasks is probably a defensible exercise of the Board's authority. To the extent the use of volunteers is formalized through the adoption of regulations or extends beyond an advisory role to become part of your formal disciplinary process, such use could raise questions about the Board's statutory authority. Legislative action such as an amendment of Neb. Rev. Stat. § 1-113 would ensure the Board's authority to create a committee of volunteers for enforcement purposes.
2. Payments to Volunteers
Assuming in answering your second question that the Board does have the authority to create an enforcement committee that includes volunteers that are members of the CPA profession, the next question that you have raised is whether the Board has the authority to pay a per diem and expenses for the volunteer members' participation. While we have found no statutory authority for the payment of a per diem to volunteers on a committee, it appears that if the volunteers are actually members of a state committee, the Board may be able to reimburse the actual and necessary expenses of the volunteers pursuant to Neb. Rev. Stat. §81-1180 (1999), which provides as follows:
 Any member of any state commission, council, committee, or board who is not entitled to reimbursement under the provisions of section 81-1178
or 81-1179 shall be entitled to be reimbursed for his or her necessary and actual expenses as provided in sections 81-1174 to 81-1177 if an appropriation is made for such purpose and if the reimbursement is approved by the Governor or, in cases in which the commission, council, committee, or board has been created to assist the Legislature in the performance of its duties, by the Executive Board of the Legislative Council.
See also Op. Att'y Gen. No. 93069, in which we concluded that certain committee members would be entitled to reimbursement of expenses with the approval of the Governor and if the appropriation of funds was made. Reimbursement of such expenses as meals and travel would be made pursuant to Neb. Rev. Stat. §§ 81-1174 through 81-1177 and would be requested by and paid to the individual volunteer.
3. Board's Liability for Actions of Volunteers
Your third question concerns the Board's potential liability for these individuals' actions. As stated previously, your opinion request letter does not explain the role of the volunteer members of the proposed enforcement committee and so we are not sure what actions of the volunteer members you believe may expose the Board to liability or what type of liability you have in mind.
We assume you are asking whether the State will defend a lawsuit brought against a volunteer in connection with his or her assistance to the Board or whether the State will pay any judgment against a volunteer arising out of that lawsuit. It is difficult to provide a comprehensive answer to your question because the answer will depend largely on the facts and circumstances of each particular case that might arise. To the extent that a potential lawsuit would fall within the parameters of the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 to 81-8,235
(1996), (Cum. Supp. 2000 and Supp. 2001) or the indemnification and legal representation statutes, Neb. Rev. Stat. §§ 81-8,239.05 and 81-8,239.06
(1996), we would need to examine whether the volunteers are state officers or employees. We have previously addressed the question of who is a state officer or employee under those statutes in Op. Att'y Gen. No. 92058 and Op. Att'y Gen. No. 93069 and we enclose copies of those opinions for your review. Based on the analysis provided in those opinions it is our view that the volunteers could possibly be characterized as state officers or officials within the meaning of the statutes cited above, which would qualify them for state indemnification and legal representation for certain actions. Again, this will depend on the facts of each situation. We point out, also, that a court could certainly take a different view.
4. Payment To A Firm Rather Than An Individual
As stated in answer to your second question, to the extent reimbursement of actual expenses may be authorized under Neb. Rev. Stat. § 81-1180, such payment would be made to the individual volunteer.
Sincerely,
 DON STENBERG Attorney General
 Lynn A. Melson Assistant Attorney General
Approved:
_________________________________ Attorney General