**SUNDAY CANYON PROPERTY OWNERS ASSOCIATION,**
Appellant,

v.

**Clarence ANNETT and Inez Annett, Appellees.**

No. 07–97–0246–CV.

Court of Appeals of Texas, Amarillo.

Aug. 31, 1998.

---

Mullin Hoard & Brown LLP, David Mullin, Robert R. Bell, Amarillo, for appellant.

Robinson & Fotheringham, Mark D. Tatum, Amarillo, for appellees.

Before QUINN and REAVIS, JJ., and REYNOLDS,* Senior Justice.

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, *sitting by assignment.*

REYNOLDS, Senior Justice (Retired).

The question in this appeal is whether, as both Sunday Canyon Property Owners Association (SCPOA) and Clarence and Inez Annett (the Annetts) contend, the trial court erred in its declarations regarding modification of the original deed restrictions pertaining to Sunday Canyon Unit No. 1 in Randall County. We will affirm in part and reverse and render in part.

In March of 1965, a residential subdivision situated in Randall County and named Sunday Canyon Unit No. 1 was dedicated by a recorded plat and restrictions.[1] The plat was expressly adopted as a plan for developing the subdivision by providing for the grant to prospective lot owners of easements for roads, for restrictions, and for covenants running with the land and binding upon each lot owner. The restrictive covenants, eight in number, were binding upon each owner of the lots for a term of ten years, and were automatically extended for additional periods of ten years "unless terminated or changed by a recorded vote by a majority of the then owners of the lots in this addition." The plan also contained this provision:

> The covenants, conditions[,] agreements, reservations, restrictions and charges created and established herein for the benefit of said subdivision and each lot therein may be waived, abandoned, terminated, modified, altered or changed as to the whole of said tract or any portion thereof, at any time, with the written consent of the owners of 51% of the lots in the tract.[2]

The plan specified that no waiver, abandonment, termination, modification, or alteration shall become effective until the proper written instrument shall be executed and recorded in the deed records of Randall County.[3]

In 1966, the Annetts purchased one lot in the subdivision, and in 1976 purchased another one. One lot was improved; the other lot remains unimproved. Clarence Annett acknowledged that they had no problem in agreeing to the original deed restrictions.

By 1983, several problems had arisen, foremost of which was the deterioration of existing roads, which raised the possibility of the loss of postal and school bus services. Voluntary labor and contributions by the residents of the subdivision were inadequate to remedy the situation. Consideration of leaving by many of the residents threatened the survival of the subdivision.

Prompted by these circumstances, the owners of more than 51% of the lots in the subdivision began, in July of 1983, the execution and later, in March of 1984, the recordation of a modification of the plat and restrictions for the subdivision. The modification provided that each lot owner shall be a member of SCPOA, entitled to one vote for each lot owned. SCPOA was empowered to levy charges and assessments against the lots to maintain, preserve and improve the roads, water system,[4] and common areas of the subdivision, to provide for architectural control over improvements on the lots, and to promote the health, welfare and safety of the residents. All charges and assessments, together with interest, costs and attorney's fees, were stated to be a lien on each lot against which they were assessed, and the personal obligation of the owner of the lot. The Annetts not only did not sign the modification agreement, but in August of 1983 by means of registered mail, notified one of the signatories of the agreement that they did not wish to became a member of SCPOA or be bound by or subject to any monetary levies.

---

1. The dedication was made by Bob Ferrin Construction Company, acting through its owner Robert W. Ferrin, and C.W. Crouch, the owners of the real property.

2. The trial court noticed that "a majority of the then owners of the lots" which was required to terminate the automatic extension of the restrictive covenants, and the "owners of 51% of the lots in the tract" which were required to terminate or change the restrictive covenants, were "mutually exclusive."

3. The plan, seemingly prepared without the imprimatur of legal counsel, was, in the words of the trial judge, "very, very, very poorly drafted."

4. The water system was the subject of prior litigation. *See Annett v. Sunday Canyon Water Supp. Corp.*, 826 S.W.2d 623 (Tex.App.—Amarillo 1991, writ denied).

Nevertheless, the Annetts paid assessments levied against their property until the year 1989, when they, stating that the assessments were paid under protest, filed the action initiating this litigation in September of 1989. Alleging the original deed restrictions were so vague and ambiguous as to be incapable of enforcement, and that the modification created new powers not intended by the original deed restrictions, thereby requiring acceptance by all of the lot owners, they sought the invalidation of the deed restrictions and their modification, the enjoinment of assessments against, and imposition of liens on, their property, and damages, including penalties for usury because of unauthorized charges of interest on assessments levied.

Answering by way of a general denial as well as affirmative defenses, SCPOA counterclaimed against the Annetts. Asserting the restrictive covenants were valid, SCPOA sought recovery of unpaid assessments, interest, attorney's fees and costs.

Hearing evidence, the trial court rendered its judgment. The court decreed that the modification complies with the mechanism for amendment of the original restrictions, and that the modifications are enforceable against the Annetts' property, except that the modification which provides for assessments and charges to constitute a lien against the Annetts' property exceed the scope of allowable amendments under the original restrictions. Thereupon, the court adjudged the assessments and charges were void ab initio and unenforceable. Resultantly, the court permanently enjoined SCPOA from making, collecting or enforcing the charges or assessments on the Annetts' property. All relief sought by the parties and not expressly granted was denied. At the request of the parties, the court made and filed findings of fact and conclusions of law.

Both SCPOA and the Annetts appealed. SCPOA raises two issues; the Annetts present five issues. Inasmuch as the issues are submissions of errors of adjudication by the trial court, they will be referred to as points of error.

First, SCPOA contends the court erred in adjudging that the assessments and charges against the Annetts' property are unenforceable. Second, SCPOA contends that because the modifications are valid and enforceable against the Annetts' property, the court erred in failing to award it both the assessments and attorney's fees.

Essentially, the Annetts present the points, as numbered, that the trial court erred in failing to (2) declare the original deed restrictions unenforceable as to mechanisms for amendment, (1) declare the formation of SCPOA by the modification is void, (3) declare the modified deed restrictions unenforceable as to voting procedures and purposes, (4) find acts of usury committed by SCPOA, and (5) award them reasonable attorney's fees.

■ As quoted above, the original plat and restrictions provided for the right of owners of 51% of the lots to change the restrictive covenants by their written, executed, and recorded consent. By providing both the right to amend the restrictive covenants and the method of amendment, the instrument, both legally and as found by the trial court, sufficiently set forth an enforceable mechanism for amendment. *Couch v. Southern Methodist University*, 10 S.W.2d 973, 973–74 (Tex. Comm'n App.1928, judgm't adopted). Thus, the Annetts' second point of error must be, and it is, overruled.

■ Given the right and method of amendment, the modification was effective as a reformation of the restrictive covenants which is not suggested to be illegal or against public policy. *Miller v. Sandvick*, 921 S.W.2d 517, 521–22 (Tex.App.—Amarillo 1996, writ denied). Then, the question, posed by SCPOA's first point and the Annetts' second point, is whether the provision for the creation of SCPOA with its powers was authorized and is valid under the original instrument.

The trial court found that although not expressly stated, the purpose of the original plat was to protect the rights of the property owners and to enhance and protect the value, attractiveness and desirability of the lots, the same purpose expressed for the modification in the executed and recorded instrument. However, the court found that the creation of

a property owners association with the power to charge and assess the property owners and their property exceeded the original purpose of the right to amend contemplated by purchasers prior to the amendment. Then, the court concluded that such amendment was such a material change in the restrictions and covenants as to be non-binding as to the non-consenting property owners.

Notwithstanding the court's finding that the creation of SCPOA exceeded the original purpose of the right to amend contemplated by purchasers prior to the amendment, it is of no moment. Recognized long ago was the right of persons, such as the owners of lots in Sunday Canyon Unit No. 1, to contract with relation to their property as they see fit in the absence of contraventions of public policy and positive law. *Curlee v. Walker*, 112 Tex. 40, 244 S.W. 497, 498 (1922). That right is derived from ownership of the property, and embraces the ability to impose on the property restrictive covenants and to abrogate or modify them. *Hill v. Trigg*, 286 S.W. 182 (Tex. Comm'n App.1926, judgm't adopted).

The plat and dedication by which the restrictive covenants were created likewise created the right to change those restrictions by the written consent of the owners of 51% of the lots in the subdivision. Owners of more than 51% of the lots exercised their right to effect a modification of the restrictions and, in doing so, did not destroy the dedication, but made changes in exact accordance with it to further the purpose of the restrictions. *Couch v. Southern Methodist University*, 10 S.W.2d at 974. Consequently, we hold that the creation of SCPOA with its attendant powers was effected by a valid modification of the restrictive covenants. SCPOA's first point is sustained and the Annetts' second point is overruled.

∎ The Annetts use their third point of error to fault the trial court for failing to declare the modified deed restrictions unenforceable for vagueness and ambiguity as to voting procedures is unavailing. They do not suggest, and we have not found, any place in

the record where this complaint was made to the trial court as a prerequisite to presenting it for appellate review. Tex.R.App. P. 33.1(a)(1). Nor did they include the complaint in their motion for new trial as the means to preserve it for appellate review. *Luna v. Southern Pacific Transp. Co.*, 724 S.W.2d 383, 384 (Tex.1987). The point is overruled.

∎ The modified restrictive covenants provided that unpaid assessments shall bear interest from the 30th day at the rate of 6% per annum. As their fourth-point contention, the Annetts charge the trial court with error in failing to find acts of usury and double usury on their evidence that SCPOA charged interest from the date of the assessments instead of commencing on the 30th day after the time the assessments were payable. However, the court found that the evidence offered by the Annetts was both legally and factually insufficient to support their claim.

By definition, "[i]nterest is the compensation allowed by law for the use or forbearance or detention of money." Tex.Rev.Civ. Stat. Ann. art. 5069–1.01(a) (Vernon 1987). And "[u]sury is interest in excess of the amount allowed by law." Tex.Rev.Civ. Stat. Ann. art. 5069–1.01(d) (Vernon 1987).[5] Because the late charge for the unpaid assessments was neither the use, forbearance or detention of SCPOA's money so as to constitute interest within the meaning of the usury statute, the usury laws do not apply. *Tygrett v. University Gardens Home. Ass'n*, 687 S.W.2d 481, 483 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). The Annetts' fourth point of error is overruled.

∎ Both SCPOA and the Annetts pleaded for attorney's fees under the statute which provides that in declaratory judgment actions, the "court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997). However, the trial court declined to award either party attorney's fees, finding that "the equi-

---

5.  These statutes were repealed by Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3601–02, effective September 1, 1997, upon adoption of the Texas Finance Code, which contains similar definitions of interest and usury in §§ 301.001(4) and 301.002(a), respectively.

ties of the respective parties, with regard to the underlying issues, are of equal merit." SCPOA, with its second point, and the Annetts, with their fifth point, respectively charge the court erred in failing to award attorney's fees.

 Under the statute, the award of attorney's fees lies within the sound discretion of the trial court, and its judgment will not be disturbed on appeal in the absence of a clear showing that it abused its discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). By its finding, the court obviously recognized that SCPOA and the Annetts had legitimate rights to pursue and, therefore, it would not be equitable and just to award either attorney's fees. *Knighton v. IBM*, 856 S.W.2d 206, 210–11 (Tex.App.—Houston [1st Dist.] 1993, writ denied). From this record, we cannot say that the court clearly abused its discretion. Oake v. Collin County, 692 S.W.2d at 456; Knighton v. IBM, 856 S.W.2d at 211. The points of error are overruled.

Conformable with our resolutions of the points of error, the portion of the trial court's judgment denying·SCPOA recovery of the assessments levied against the Annetts and their property is reversed, and judgment is here rendered that SCPOA recover from the Annetts the amount of each unpaid assessment with interest from the 30th day after the assessment was payable at the rate of 6% per annum until the date of the trial court's judgment, together with interest at the rate of 10% per annum from the date of judgment until paid. Tex.R.App. P. 43.2(c). In all other respects, the judgment is affirmed.