No. 99-328

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 292

297 Mont. 77

990 P.2d 769

---

WINDEMERE HOMEOWNERS

ASSOCIATION, INC., a Montana

nonprofit corporation,

Plaintiff and Respondent,

v.

GREGORY S. McCUE, ROBI L.

McCUE, MICHAEL R. McCUE,

RONALD H. PERKINS, KATHLEEN E.

PERKINS, WALTER PERKINS,

NORMA PERKINS and LARRY C.

MANNING,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Edward P. McLean, Judge presiding.


COUNSEL OF RECORD:

For Appellants:

Timothy D. Geiszler, Geiszler & Newcomer, PLLP; Missoula, Montana

For Respondent:

Quentin M. Rhoades, Sullivan & Tabaracci; Missoula, Montana

---

Submitted on Briefs: September 2, 1999

Decided: November 30, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

1. ¶ This is an appeal from a declaratory judgment entered by the Fourth Judicial District Court, Missoula County. The court determined that the Windemere Homeowners Association, Inc., had authority, under a 1997 Amendment to restrictive covenants, to assess against subdivision tract owners the costs of paving a common road. The Appellants are tract owners who neither consented to nor

approved the 1997 Amendment. We affirm.

¶ The issues are:

¶ 1. Did the District Court err in determining that the clause of the restrictive covenants allowing for amendment authorized the creation of new or unexpected restrictions not contained or contemplated in the original covenants?

¶ 2. Does the court's determination that the paving of Windemere Drive was done to address health and safety concerns of the residents represent reversible error?

¶ 3. Did the court err in determining that the 1997 Amendment is valid and binding upon the Appellants' parcels even though the amendment did not contain any legal descriptions of the tracts of land owned by the Appellants?

## BACKGROUND

¶ The Windemere Homeowners Association brought this declaratory judgment action seeking enforcement of a 1997 amendment to restrictive covenants on the Appellants' parcels of property near Big Flat Road in Missoula County. For purposes of reciprocal summary judgment motions, the parties stipulated to a written set of agreed facts.

¶ The parties stipulated that all parties to this lawsuit own or have owned, during times pertinent to this action, residential real estate in Missoula County, Montana, and described on Certificate of Survey (COS) 1131. On February 17, 1984, a Declaration of Restrictive Covenants was recorded with the Missoula County Clerk and Recorder affecting lots 1 through 7 and 9 through 15 of COS 1131. Between 1984 and 1991, several transfers of development rights and amendments to the covenants were recorded, the validity of which was not questioned and which are not relevant to our analysis in this case.

¶ On March 1, 1994, another Amendment to Declaration of Restrictive Covenants was recorded with the Missoula County Clerk and Recorder. Holders of over 65 percent of the acreage within lots 1 through 7 and 9 through 15 approved the changes, and thus validly modified the covenants. The 1994 Amendment bifurcated the effect and enforcement of the covenants so that the real property lying west of Big Flat Road in tracts 1 through 5 was separated from the tracts lying east of the road in tracts 6, 7, and 9 through 15.

¶ On March 20, 1997, another Amendment to Declaration of Restrictive Covenants was recorded with the Missoula County Clerk and Recorder. This Amendment was approved by 74 percent of the owners of lots 6, 7, and 9 through 15 of COS 1131, and purports to modify the covenants and restrictions applicable to those lots. The

1997 Amendment created the Windemere Homeowners Association, Inc., and made the Association responsible for necessary maintenance, repair, reconstruction, and snow removal on Windemere Drive. The 1997 Amendment further granted the Association authority to reimburse the parties who had paid for the paving of Windemere Drive in 1996 and to assess tract owners for the costs of such reimbursement. The Association's unsuccessful attempts to collect on its resulting assessments for the paving of Windemere Drive culminated in this action.

## STANDARD OF REVIEW

10. ¶ Because this case was decided on cross-motions for summary judgment, this Court conducts the same evaluation as did the District Court, based upon Rule 56, M.R. Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. If, as is conceded here, there are no genuine issues of material fact, our standard of review is whether the District Court erred in determining that the successful movant for summary judgment was entitled to judgment as a matter of law. *Bruner*, 272 Mont. at 265, 900 P.2d at 903.

## ISSUE 1

11. ¶ Did the District Court err in determining that the clause of the restrictive covenants allowing for amendment authorized the creation of new or unexpected restrictions not contained or contemplated in the original covenants?

12. ¶ The parties agree that the question of whether restrictive covenants may be amended to oblige a nonconsenting landowner to new or different use restrictions is a question of first impression in Montana. The District Court concluded that such a result could be accomplished here, based upon the language of the particular covenants in effect in this case.

13. ¶ Restrictive covenants are construed under the same rules as are other contracts: courts read declarations of covenants on their four corners as a whole and terms are construed in their ordinary or popular sense. *Newman v. Wittmer* (1996), 277 Mont. 1, 6, 917 P.2d 926, 929. While restrictive covenants are strictly construed and ambiguities are to be construed to allow free use of the property, free use of the property must be balanced against the rights of other purchasers in the subdivision. *Newman*, 277 Mont. at 6, 917 P.2d at 929.

14. ¶ Appellants point out that restrictive covenants should not be extended by implication or enlarged by construction. *Higdem v. Whitham* (1975), 167 Mont. 201,

208-09, 536 P.2d 1185, 1189-90. In *Jarrett v. Valley Park, Inc.* (1996), 277 Mont. 333, 341, 922 P.2d 485, 489, we clarified that "our meaning was that the district court could not 'broaden' the covenant by adding a limitation not contained therein."

15. ¶ The Appellants rely upon *Lakeland Property Owners Association v. Larson* (Ill. App. Ct.1984), 459 N.E.2d 1164, 1169; *Caughlin Ranch Homeowners Association v. Caughlin Club* (Nev. 1993), 849 P.2d 310; and *Boyles v. Hausmann* (Neb. 1994), 517 N.W.2d 610, for their holdings that the power to amend restrictive covenants could not bind nonconsenting landowners to restrictions on use not contained in the original covenants. The Appellants urge this Court to adopt a similar holding here.

16. ¶ In both *Lakeland* and *Caughlin*, the clauses allowing amendment to the original restrictive covenants were quite limited. In *Lakeland*, the provision permitting the change of covenants:

[C]learly directs itself to changes of existing covenants, not the adding of new covenants which have no relation to existing ones. This provision precedes the covenants, states that it permits changes to "the following covenants," and permits a majority of the lot owners to change "the said covenants."

*Lakeland*, 459 N.E.2d at 1169. In *Caughlin*, the amendment provisions in the original covenants allowed for the amendment of assessment obligations imposed upon owners of single-family residences or a living unit in multi-family residences. The amendment which was challenged in *Caughlin*, however, provided for assessments on new classifications of commercial or recreational property. *Caughlin*, 849 P.2d at 312.

17. ¶ In *Boyles*, the original covenants allowed for changes to "[t]hese covenants, water use regulations, restrictions and conditions" if a majority of the then owners agreed to "change same in whole or in part." *Boyles*, 517 N.W.2d at 616. The court held that this grant of amendatory power did not give the majority authority to adopt a new covenant prohibiting building within 120 feet of the county road which ran through the subdivision–a use not previously restricted. *Boyles*, 517 N.W.2d at 616.

18. ¶ In the present case, the original February 1984 declaration of restrictive covenants included the following provision allowing for amendment of the covenants:

The covenants, conditions, restrictions and uses created and established herein may be waived, abandoned, terminated, modified, altered or changed as to the whole of the said real property or any portion thereof with the written consent of the owners

of sixty-five percent (65%) of the votes from the real property described herein above. Each acre shall be entitled to one (1) vote in any election to decide any issues involving waiver, abandonment, termination, modification, alteration or change of the restrictive covenants as to a whole of the real property or any portion thereof.

Appellants rely on the above reference to covenants "created and established herein," contending that this language limits the amendatory power to covenants already present in the 1984 covenants. They further maintain that the 1997 Amendment seeks to create new and substantially different covenants rather than to amend existing covenants.

19. ¶ Appellants' observations are correct, to a point. However, the remaining language of the 1984 covenant printed above is broad. The drafters used universal language to describe the kinds of changes a super-majority of at least 65 percent of the tenants may make: "waive[], abandon[], terminate[], modify[], alter[] or change[]." Further, the original covenants clearly provide that every aspect of the "covenants, conditions, restrictions and uses" is subject to such amendment by a super-majority.

20. ¶ In *Sunday Canyon Property Owners Association v. Annett* (Tex. App. 1998), 978 S.W.2d 654, a Texas court of appeals considered restrictive covenant language remarkably similar to the language in the present case. The *Sunday Canyon* covenants provided:

The covenants, conditions[,] agreements, reservations, restrictions and charges created and established herein for the benefit of said subdivision and each lot therein may be waived, abandoned, terminated, modified, altered or changed as to the whole of said tract or any portion thereof, at any time with the written consent of the owners of 51% of the lots in the tract.

*Sunday Canyon*, 978 S.W.2d at 656. The court concluded that although the original covenants containing the above provision did not expressly contemplate the formation of a homeowners association, later amendment to create such an association "with its attendant powers" was a valid modification of the restrictive covenants. *Sunday Canyon*, 978 S.W.2d at 658. The court stated that it was "of no moment" that the creation of the homeowners association may have exceeded the original purpose of the right to amend as contemplated by purchasers prior to the amendment. The amendment was valid under the contractual provision creating a right to change the covenants by written consent of the owners of 51 percent of the

lots in the subdivision. *Sunday Canyon*, 978 S.W.2d at 658.

21. ¶ We conclude that Appellants' reliance upon *Lakeland*, *Caughlin*, and *Boyles* is misplaced. The covenant language used in all three cases is markedly different from that used here. The amendatory language in the original covenants in this case is much more similar to that at issue in *Sunday Canyon*. Additionally, the changes in the 1997 Amendment in this case do not constitute a prohibition on a use not previously restricted, as in *Boyles*.

22. ¶ We hold that the language of the original declaration of restrictive covenants was broad enough to authorize the subsequent 1997 Amendment by a super-majority of 65 percent or more of the property owners. We therefore hold that the District Court did not err in determining that the clause of the restrictive covenants allowing for amendment authorized the creation of new or unexpected restrictions not contained or contemplated in the original covenants.

## ISSUE 2

23. ¶ Does the court's determination that the paving of Windemere Drive was done to address health and safety concerns of the residents represent reversible error?

24. ¶ The District Court noted a maintenance provision in the 1984 covenants which provided in relevant part:

Each property owner shall provide exterior maintenance. The premises, improvements and appurtenances shall be maintained in a safe, neat, clean and orderly condition.

The court further noted the provision in the original covenants that:

No noxious or offensive activity shall be carried on or permitted; nor shall the property be used in any way which may endanger the health, welfare or safety of or unreasonably disturb the occupants of the said real property described herein above.

The court reasoned that these provisions permit land owners to take affirmative steps to provide a safe, clean condition, and that the 74 percent super-majority vote for the 1997 Amendment reflected "the majority's opinion that the health and welfare of subdivision occupants were being compromised by increased road dust caused by ever increasing traffic on the non-paved road." Appellants declare that

this statement is not supported in the record.

25. ¶ The District Court's statement may have intuitive appeal, but it has little support in the stipulated facts or in the text of the 1997 Amendment. However, even if this statement represents an inference on the part of the court, it is not essential to the court's decision that the 1997 Amendment is enforceable. Under the broad powers of amendment discussed above, it is unnecessary that amendments to the restrictive covenants be connected to a provision of the original restrictive covenants. The 1997 Amendment specifically authorizes the Association to reimburse the parties who paid for the paving of Windemere Drive and to assess subdivision landowners for the costs of such reimbursement. We hold that the court's error, if any, is harmless.

## ISSUE 3

26. ¶ Did the court err in determining that the 1997 Amendment is valid and binding upon the Appellants' parcels even though the amendment did not contain any legal descriptions of the tracts of land owned by the Appellants?

27. ¶ Appellants point out that to be binding upon a parcel of real property, the recorded encumbrance "must describe the land covered by it with sufficient accuracy to enable one examining the record to identify the land." *Poncelet v. English* (1990), 243 Mont. 481, 484, 795 P.2d 436, 438. The 1997 Amendment states that it contains an "Exhibit A" with legal descriptions of the lands affected. However, no Exhibit A was recorded with the 1997 Amendment. This, the Appellants argue, renders the 1997 Amendment invalid as to their properties.

28. ¶ The District Court determined that this argument by Appellants was not persuasive because the 1997 Amendment referred to the previously filed 1994 Amendment, which contains legal descriptions of all 14 original tracts. Therefore, anyone searching the public record can in fact identify which particular lots are bound by the 1997 Amendment.

29. ¶ The court further reasoned:

[A]ll Defendants herein do not deny that in one way or another they had actual notice of the consideration and adoption of the 1997 Amendment by super-majority vote, and therefore, any claims by any of these Defendants that they should not be bound by the 1997 Amendment based upon claims of failure of adequate notice fails under the undisputed facts in this matter, whether or not these individual Defendants

actually objected to or voted against the 1997 Amendment.

We agree with that reasoning. "The form of recording of conveyance is paramount *unless* a party has *actual* notice of a prior claim." *Poncelot*, 243 Mont. at 484, 795 P.2d at 438. The parties have stipulated that, before the vote on the 1997 Amendment, the Association mailed to the Appellants copies of the proposed Amendment, together with ballots soliciting their approval. Appellants McCue and Ronald and Kathleen Perkins have not disputed that they received such copies. Although Appellants Walter and Norma Perkins were not personally mailed a copy or other notice of the 1997 Amendment, their cotenants, Ronald and Kathleen Perkins, were. And although Appellant Manning believes he did not receive the mailed notice, he does not dispute that the Association mailed him a copy of the 1997 Amendment just as it did the other owners, or that he had actual notice of the 1997 Amendment.

30. ¶ We conclude that, because the Appellants had actual notice of the 1997 Amendment, the question of whether they had inquiry or constructive notice as a result of the filing of the 1997 Amendment never arises. We hold that the 1997 Amendment is valid and binding upon the Appellants' parcels.

31. ¶ Finally, the Association asks for its costs and attorney fees "in resisting this unmeritorious appeal." Because the ultimate failure of Appellants' arguments is not sufficient to justify the imposition of costs and attorney fees under Rule 32, M.R. App.P., as damages for an appeal without merits we do not grant the Association's request. However, we note that the District Court awarded the Association costs and attorney fees below, pursuant to the restrictive covenants. We remand to the District Court for consideration of the matter of costs and attorney fees on appeal.

32. ¶ Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

Justice James C. Nelson dissents.

33. ¶ I dissent from the Court's decision as to Issue 1, and would therefore not reach Issue 2 or 3. I would reverse.

34. ¶ As the majority acknowledges, we stated in *Higdem v. Whitham* (1975), 167 Mont. 201, 208-09, 536 P.2d 1185, 1189, that restrictive covenants should not be extended by implication or enlarged by construction and, in *Jarrett v. Valley Park, Inc.* (1996), 277 Mont. 333, 341, 922 P.2d 485, 489, that the district court could not "broaden" a covenant by adding that which was not contained therein. I respectfully suggest that the trial court and, now, this Court have done exactly that in the case at bar.

35. ¶ As noted, restrictive covenants are construed under the same rules as are other contracts. *Newman v. Wittmer* (1996), 277 Mont. 1, 6, 917 P.2d 926, 929. In that respect, it is well_settled that "[w]here the language of an agreement is clear and unambiguous and, as a result, susceptible to only one interpretation, the duty of the court is to apply the language as written." *Carelli v. Hall* (1996), 279 Mont. 202, 209, 926 P.2d 756, 761 (citing *Audit Services, Inc. v. Systad* (1992), 252 Mont. 62, 65, 826 P.2d 549, 551). If the terms of the contract are clear, "there is nothing for the courts to interpret or construe" and the court must determine the intent of the parties from the wording of the contract alone. *Wray v. State Compensation Ins. Fund* (1994), 266 Mont. 219, 223, 879 P.2d 725, 727; *Martin v. Community Gas & Oil Co.* (1983), 205 Mont. 394, 398, 668 P.2d 243, 245. *See also Toavs v. Sayre* (1997), 281 Mont. 243, 245-46, 934 P.2d 165, 166-67. *Accord Fox Farm Estates Landowners v. Kreisch* (1997), 285 Mont. 264, 268-69, 947 P.2d 79, 82.

36. ¶ The covenant at issue states:

The covenants, conditions, restrictions and uses created and established herein may be waived, abandoned, terminated, modified, altered or changed as to the whole of the said real property or any portion thereof with the written consent of the owners of sixty-five percent (65%) of the votes from the real property described herein above. Each acre shall be entitled to one (1) vote in any election to decide any issues involving waiver, abandonment, termination, modification, alteration or change of restrictive covenants as to a whole of the real property or any portion thereof.

37. ¶ Applying all of the above-referenced interpretational rules to this restrictive covenant, I conclude that the plain and unambiguous language of the covenant limits the waiver, abandonment, termination, modification, alteration or changing of any covenant, condition, restriction and use to those "created and established" in the original declaration of restrictive covenants. There is simply no way to read the cited language in any other fashion without extending the language "by implication," without enlarging the language "by construction" and without "broadening" the covenant by adding that which is not contained therein.

38. ¶ It is undisputed that the original declaration of covenants at issue, as adopted in 1984, did not permit--by implication or directly--the creation of a homeowners' association much less did this declaration allow such an association to assume financial responsibility for paving roads and to require reimbursement of those property owners who individually paid for paving the roads by those property owners who did not agree with the paving. The covenant language cited in ¶ 36 above, therefore, cannot be construed so as to allow the waiver, abandonment, termination, modification, alteration or changing of covenants and provisions which did not already exist in the declaration of restrictive covenants at its inception. Specifically, this language cannot be used to broaden, extend or enlarge the original covenants to allow for the creation of a homeowners' association and to endow that association with various powers.

39. ¶ It is axiomatic that persons who purchase real property covered by restrictive covenants do so with the reasonable and justifiable expectation that the covenants will be enforced as written. As part of the purchase bargain they rightfully expect that such covenants will not be waived, abandoned, terminated, modified, altered or changed by other property owners except in strict compliance with the provisions of the declaration of covenants themselves or in accordance with supervening statutory law. To conclude otherwise simply means that the "contract" between the property purchaser and the developer or seller as represented by the declaration of covenants is composed of essentially unenforceable promises and obligations. It provides no protection whatsoever; it is worthless. Obviously, that is not the law of contracts, nor is it the law of covenants--as our own jurisprudence clearly reflects (Texas case law notwithstanding).

40. ¶ Here, we have allowed a super-majority of the property owners to abrogate the premises, promises and expectations clearly expressed in the declaration of covenants and upon which the appellants purchased their properties. I suggest that not only is our decision patently unfair to those litigants, but, as well, it is a departure from our prior case law strictly construing covenants to allow free use of

property. *See Newman*, 277 Mont. at 6, 917 P.2d at 929. Worse, this case will open the door to allowing majority property owners in a subdivision to violate restrictive covenants covering the subdivision and, concomitantly, to abridge the reasonable and justifiable expectations and rights of minority property owners whenever and for no other reason than that the majority determine that it is in its best interest to do so. I cannot agree.

41. ¶ I dissent.

/S/ JAMES C. NELSON