Robert A. WEST, Plaintiff–Appellant,

v.

EVERGREEN HIGHLANDS ASSOCIA-TION, a Colorado non profit corpo-ration, Defendant–Appellee.

No. 00CA1586.

Colorado Court of Appeals,
Div. I.

Nov. 23, 2001.

Rehearing Denied March 14, 2002.*

Certiorari Granted Sept. 23, 2002.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2001.

* Metzger, J., would GRANT.

Stephen A. Groome, Conifer, CO, for Plaintiff–Appellant.

Winzenburg, Leff, Purvis & Payne LLP, Lawrence B. Leff, Carey Gunn Helm, for Defendant–Appellee.

Opinion by Judge NEY.

Plaintiff, Robert A. West, appeals the judgment entered in favor of defendant, Evergreen Highlands Association, declaring valid a restrictive covenant affecting his real property. We reverse and remand.

This case concerns property located in Evergreen Highlands Subdivision—Unit 4, in Jefferson County. In 1972, protective covenants for the subdivision were recorded in Jefferson County. Paragraph 13 of those covenants stated that:

> These covenants shall run with the land and shall bind all parties and all persons claiming under them for a period of ten years from the date of filing ... and shall automatically be continued thereafter for successive periods of ten years each; *provided, however, that the owners of seventy-five percent of the lots which are subject to these covenants ... may change or modify any one or more of said restrictions,* by executing and acknowledging an appropriate agreement ... (emphasis added).

In 1982, an amendment to the protective covenants was filed with Jefferson County. The recitals to the amendment indicated that paragraph 13 of the 1972 covenants allows for "amendment" of the protective covenants.

Nothing in the 1972 protective covenants or in the 1982 amendment thereto provided for membership in the association, assessment of dues, or the power to subject subdivision property to a lien for the nonpayment of dues.

Subsequently, in 1986, plaintiff purchased real property located in the subdivision. He purchased his property subject to the 1972 protective covenants and to the 1982 amendment thereto.

In December 1995, defendant recorded a document entitled "Written Consent to Amend Protective Covenants for [the Subdivision] Prepared and Recommended by the Evergreen Highlands Association." It was signed by seventy-five percent of the subdivision lot owners, but not by plaintiff. This document purported to add a "new" article 16 to the protective covenants, which, among other things, required all lot owners in the subdivision to be members and pay dues to defendant and subjected the subdivision lots to liens for nonpayment of dues.

Defendant subsequently notified plaintiff that it would record a lien against his proper-

ty for nonpayment of annual dues pursuant to article 16. In response, plaintiff filed this action seeking to have the 1995 written consent document declared invalid.

The court ruled that the covenant contained in the 1995 written consent document was valid and enforceable against plaintiff. This appeal followed.

## I.

■ Plaintiff contends that the trial court erred in interpreting paragraph 13 of the 1972 protective covenants to allow seventy-five percent of the subdivision lot owners to add a new restrictive covenant, binding all the property owners in the subdivision, when such restrictions were not addressed in either the 1972 protective covenants or the 1982 amendment thereto. We agree.

■ Construction of a covenant is a question of law that requires de novo review. *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.*, 21 P.3d 860 (Colo.2001).

■ When interpreting a restrictive covenant, courts will enforce it as written if it is clear on its face. When interpreting an unclear covenant, courts resolve all doubts against the restriction and in favor of free and unrestricted use of the property. *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc., supra.*

The language at issue from paragraph 13 of the 1972 protective covenants provides that "owners of seventy-five percent of the lots ... may change or modify any one or more of said restrictions." Plaintiff's position is that the 1995 amendment improperly *adds* article 16 to the protective covenants, when the 1972 protective covenants only allow existing covenants to be *changed or modified* by seventy-five percent of the lot owners.

Both parties agree this issue is one of first impression in Colorado.

## A.

Plaintiff refers us to cases from other jurisdictions in which covenants allowing future modification or amendment were narrowly drafted. He argues that in those cases such narrowly drafted covenants, like paragraph 13 here, have been construed against restriction of property rights. We find those cases persuasive.

For example, in *Lakeland Property Owners Ass'n v. Larson*, 121 Ill.App.3d 805, 77 Ill.Dec. 68, 459 N.E.2d 1164, 1167 (1984), the court held that the language "to change the said covenants in whole or in part" did not permit the addition of a new covenant allowing a homeowners association to collect mandatory dues. The court concluded that the "provision permitting the change of covenants ... clearly directs itself to changes of existing covenants, not the adding of new covenants which have no relation to existing ones." *Lakeland Property Owners Ass'n v. Larson, supra*, 77 Ill.Dec. 68, 459 N.E.2d at 1169. *See also Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610, 613 (1994)(ruling that the language to "change same in whole or in part" did not allow a majority of homeowners to adopt covenants restricting the uses of the relevant property because they were new and different from the existing covenants); *Meresse v. Stelma*, 100 Wash. App. 857, 999 P.2d 1267, 1269 (2000)(ruling that the language providing that existing covenants remain in effect until "majority vote of the then owners agree to change or alter them in full or in part" did not allow adoption of a new restrictive covenant that relocated an access road, because the covenant differed in nature from the existing covenants).

Here, the trial court relied on *Windemere Homeowners Ass'n v. McCue*, 297 Mont. 77, 990 P.2d 769, 772 (1999), in which the court found that the language providing that covenants could be "waived, abandoned, terminated, modified, altered or changed" was broad enough to authorize a new covenant not contemplated in the original restrictive covenants. *See also Sunday Canyon Property Owners Ass'n v. Annett*, 978 S.W.2d 654, 658 (Tex.App.1998)(finding a valid modification of the restrictive covenants, creating a mandatory property owners association, under the rationale that a majority of the lot owners could "contract with relation to their property as they see fit in the absence of contraventions of public policy and positive law").

The trial court also relied on *Ticor Title Insurance Co. v. Rancho Santa Fe Ass'n*, 177 Cal.App.3d 726, 732, 223 Cal.Rptr. 175, 178 (1986), in which the court reviewed language providing that any of the covenants may be "changed or modified" by approval of two-thirds of the lot owners. The homeowners association there argued that, with regard to an existing setback requirement, the "change or modify" language would only apply to a reduction, and not an increase, in the setback requirement. The court in *Ticor Title* ruled that the words "changed" and "modified" include any alteration, whether involving an increase or decrease; thus, the court presumed that two-thirds of the lot owners must approve any change or modification (i.e., any increase or decrease) in the setback requirement.

We are not convinced that the opinions relied upon by the trial court apply to the facts here. The language at issue in *Windemere Homeowners Ass'n v. McCue, supra*—"waived, abandoned, terminated, modified, altered or changed"—is significantly broader than the language at issue here. In addition, we do not consider *Ticor Title Insurance Co. v. Rancho Santa Fe Ass'n, supra*, relevant here, because the setback to be modified in that case was an existing restriction, as opposed to a new and unrelated restriction, as is at issue in this case.

Thus, we conclude that *Lakeland Property Owners Ass'n v. Larson, supra*, is persuasive and applicable to the facts presented here. The language in that case—"to change the said covenants in whole or in part"—is similar in scope to the language in this case—"change or modify any one or more of said restrictions." Moreover, "any doubt relative to the meaning and application of the covenant must be resolved in favor of the unrestricted use of property." *Dunne v. Shenandoah Homeowners Ass'n*, 12 P.3d 340, 345 (Colo.App.2000).

Therefore, we follow the reasoning and interpretation set forth in *Lakeland Property Owners Ass'n v. Larson, supra*, that the amendment provision only allows changes to the existing covenants, not the creation and addition of new covenants that have no relation to the existing covenants.

■ Accordingly, our de novo interpretation of paragraph 13 of the 1972 protective covenants is that the plain and clear language of "change or modify" means that only a pre-existing covenant, related in subject matter, may be altered by seventy-five percent of the lot owners. Our review of the 1972 protective covenants, and the 1982 amendment thereto, does not reveal a restriction or covenant regarding membership in a homeowners association or payment of dues that could, in turn, be changed or modified by seventy-five percent of the lot owners.

Thus, we conclude that the trial court erred in interpreting paragraph 13 of the 1972 protective covenants to allow seventy-five percent of the subdivision lot owners to add article 16 as a new restrictive covenant requiring mandatory membership and mandatory dues and granting defendant the power to subject the property to liens for nonpayment of the dues.

### B.

■ On appeal, defendant argues that plaintiff was on either actual or constructive notice of the restrictions contained in article 16, via documents or references in his chain of title. Specifically, defendant relies on the subdivision plat, which indicated that the park areas in the subdivision were to be conveyed to the homeowners association; the subsequent deeds conveying the park property; and defendant's articles of incorporation, which state that one of defendant's purposes is to maintain the park areas and determine annual membership and fees. Defendant thus argues that plaintiff was on notice of the possibility of change in existing restrictions and that the amended covenant making membership and fees mandatory simply reflected matters of which he was already on notice as a resident of the subdivision. Defendant argues that, as such, the trial court properly interpreted paragraph 13 of the 1972 protective covenants.

We are unpersuaded by defendant's argument that simply because plaintiff was on notice of the existence of a homeowners association, as a result, seventy-five percent of

the lot owners could amend the covenants to make membership and payment of dues in a homeowners association mandatory.

■ Defendant also relies upon the 1982 amendment, which in its recitals indicated that paragraph 13 of the 1972 protective covenants allowed for the "amendment" of the covenants by seventy-five percent of the lot owners and that all of the lot owners in the subdivision were members of the association. The recital in the 1982 amendment—which in defendant's view authorizes "amendment" of the 1972 protective covenants—cannot, in and of itself, expand or change the restrictions on the ability to modify contained in the 1972 protective covenants. *See* § 38–35–107, C.R.S.2001.

Additionally, we note that the 1982 amendment does not provide for membership in the association, the setting of dues, or liens for nonpayment.

■ Even assuming, arguendo, that the recitals in the 1982 amendment served to expand the right to modify the protective covenants by seventy-five percent of the lot owners, by describing that right as the right to "amend," we would still conclude that only a pre-existing covenant could be modified or amended by seventy-five percent of the lot owners and, as such, made applicable to all lot owners in the subdivision. *See, e.g., Caughlin Ranch Homeowners Ass'n v. Caughlin Club*, 109 Nev. 264, 849 P.2d 310, 312 (1993)(provision allowing for "amendment" refers to the amendment of "existing covenants as opposed to the creation of new covenants unrelated to the original covenants").

## II.

■ Plaintiff also contends that the trial court's interpretation of the 1972 protective covenants constitutes a wrongful impairment or taking of his property rights in violation of the Fourteenth Amendment.

Because the record indicates that this constitutional argument was not raised in the trial court, we will not consider it here for the first time on appeal. *City & County of*

*Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759 (Colo.1992).

Judgment reversed and the case is remanded with directions to enter judgment in favor of plaintiff, declaring invalid article 16 of the 1995 "Written Consent to Amend Protective Covenants for [the Subdivision] Prepared and Recommended by the Evergreen Highlands Association."

METZGER and TAUBMAN, JJ., concur.