No. 04-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 342

EUGENE J. BORDAS, JR., and PAULINE K. BORDAS,
Husband and Wife,

        Plaintiffs and Respondents,

    v.

THE VIRGINIA CITY RANCHES ASSOCIATION,
a Montana Nonprofit Corporation,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
                    In and for the County of Madison, Cause No. DV 29-2002-17
                    The Honorable Loren Tucker, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Wayne E. Jennings, Angel Coil & Bartlett, Bozeman, Montana

        For Respondents:

                Jeanette Ellen Berry, Attorney at Law, Bozeman, Montana

                      Submitted on Briefs:  August 18, 2004

                                Decided:  December 7, 2004

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 The Virginia City Ranches Association ("Association") appeals from a Decision and Order granting summary judgment to respondents Eugene J. Bordas, Jr., and Pauline K. Bordas[1] ("Bordas"), husband and wife, and joint tenants of the real property which is the subject of this action. We affirm.

## ISSUE

¶2 Did the District Court err when it granted summary judgment to Eugene J. Bordas, Jr., and Pauline K. Bordas after concluding that they were not required to be members of the Virginia City Ranches Association?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This matter was submitted to the District Court and to this Court with an agreed statement of facts, which we restate below.

¶4 Bordas are husband and wife who own in joint tenancy and reside upon certain real property located in a subdivision known as the Virginia City Ranches Subdivision ("Subdivision"), located in Madison County. The Association is a Montana nonprofit corporation with its principal place of business in Madison County.

¶5 The creation of the Association was authorized by the Protective Covenants ("Original Covenants") for the Subdivision, which were recorded at the Madison County Clerk and

---

[1] Pauline K. Bordas was a party to this case until she passed away in November 2003, shortly after trial. The Bordas' property was held in joint tenancy and transferred to Eugene Bordas upon his wife's death, and thus the parties have not substituted her estate as a real party in interest in this case.

Recorder on April 27, 1973, at Book 237, page 773. The Association was organized for the purpose of enforcing the Original Covenants and for the purpose of performing the powers and duties set forth in its Articles of Incorporation, issued May 21, 1973, and Bylaws, adopted July 26, 1982.

¶6    Bordas purchased Lots 29 and 30 on July 21, 1988, "SUBJECT to easements and restrictive covenants and reservations of record and easements visually discernable upon the premises." The northern boundary of Lot 30 abuts the Old Virginia City Highway, with access to Bordas' property by private driveway off that road. The Old Virginia City Highway is a county road, but at times, the Association and private abutting landowners have performed maintenance on it. The Association has sought to recover some of its maintenance expenses, together with other amounts, by way of assessments.

¶7    The Bylaws were revised on July 29, 1995, at an Annual Meeting of the Association. The Original Covenants were amended on August 26, 1999, at an Annual Meeting of the Association. These amendments were recorded in a document entitled "Protective Covenants with Addenda" ("Amended Covenants") at the office of the Madison County Clerk and Recorder on July 6, 2002.

¶8    Bordas objected to any requirement for mandatory membership in the Association and refused to pay the annual assessments the Association levied. The Association placed a lien for these assessments against Bordas' property, recorded in the office of the Madison County Clerk and Recorder, for each year from 1997 to date. Bordas repeatedly demanded that the

3

Association release all liens and encumbrances placed upon their real property. The Association refused.

¶9 Bordas brought this action seeking a declaratory judgment that Bordas' membership in the Association was not mandatory and that assessed liens upon Bordas' real property were not valid, and further that the Amended Covenants were not valid and enforceable. The Association conceded that the changes to the covenants which imposed new conditions not contemplated in the Original Covenants were not valid. However, whether the liens against Bordas' property were valid under the Original Covenants depended upon whether Bordas were required to be Association members. This issue was submitted to the District Court on the above agreed statement of facts and was argued on a motion for summary judgment.

¶10 On March 28, 2003, the District Court issued a Decision and Order Regarding Summary Judgment, in which it granted summary judgment to Bordas and denied the Association's cross-motion for summary judgment on a different issue which is not a subject of this appeal. The District Court concluded that Bordas were not required to be Association members. The Association timely appeals the District Court's grant of summary judgment to Bordas.

## STANDARD OF REVIEW

¶11 We review a district court's grant of summary judgment *de novo*, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *Glacier Tennis Club at the Summit, LLC v. Treweek Constr. Co., Inc.,* 2004 MT 70, ¶ 21, 320 Mont. 351, ¶ 21, 87 P.3d 431, ¶ 21 (citations omitted). In other words, the party moving for summary judgment has

4

the initial burden of proving that there are no genuine issues of material fact that would permit a non-moving party to succeed on the merits of the case, and if the moving party meets that burden, then the non-moving party must provide substantial evidence that raises a genuine issue of material fact in order to avoid summary judgment in favor of the moving party. *Glacier*, ¶ 21 (citations omitted). Once it is established that no genuine issues of material fact exist, the district court must then determine whether the moving party is entitled to judgment as a matter of law, and this Court reviews that determination to determine whether the district court erred. *Glacier*, ¶ 21 (citations omitted).

## DISCUSSION

¶12 Did the District Court err when it granted summary judgment to Eugene J. Bordas, Jr., and Pauline K. Bordas after concluding that they were not required to be members of the Virginia City Ranches Association?

¶13 The Association argues that the District Court erroneously concluded that the Articles of Incorporation, Bylaws, Original Covenants, and Amended Covenants did not create an obligation for Bordas to belong to the Association. While the Association concedes that the documents at issue were not "artfully worded," it claims that by narrowly focusing on language in the Bylaws which stated that each owner or subsequent purchaser of real property within the Subdivision "shall be eligible to belong to the Association," (hereinafter referred to as the "Eligibility Clause") the District Court "ignored many other sentences, words and phrases that suggest another meaning."

5

¶14    The Association also argues that, although the Original Covenants do not refer to Association membership, people owning property within the Subdivision nonetheless have a duty to pay their share of Association expenses.  The Association maintains that all the documents governing the Subdivision and the Association must be taken together as a whole.  The Association explains that the purpose stated in the Articles of Incorporation includes the power to fix, levy, collect, and enforce assessments, and thus, regardless of whether Bordas are Association members, they are still liable for the assessments levied against the property owners within the Subdivision.  The Association argues that the District Court's decision that Association membership is not compulsory negates the Association's power and ability to assess and enforce assessments.  "It is only through compulsory membership in the Association," it argues, "that an owner within the subdivision can be compelled to pay assessments and it is only if the owners can be compelled that the Association can enforce assessments."  The Association argues that it is not reasonable to interpret the relevant documents in a way that allows a property owner to avoid paying assessments by simply declining Association membership.

¶15    Bordas respond that the binding and determining document is the Original Covenants which run with the land, and that while the rules of contract interpretation apply to this document, they apply only to its four corners.  Moreover, Bordas point out, Montana law requires strict construction of restrictive covenants.  *Town & Country Estates Association v. Slater* (1987), 227 Mont. 489, 492, 740 P.2d 668, 670-71.  Bordas claim that the District Court correctly determined that the Original Covenants contained no requirement for

6

Association membership and that the Eligibility Clause made membership permissive only. Bordas further point out that the Original Covenants contained no provision for amendment, and thus, the Amended Covenants are ineffective without unanimous consent of the property owners.

¶16 Finally, Bordas concede that the Original Covenants bind all Subdivision property owners; however, they claim those covenants merely provided for the creation of the Association to be formed for administrative purposes. Nothing in these covenants, they claim, compels Subdivision property owners to become Association members.

¶17 The relevant language in the Bylaws states,

> Each original owner or owners or subsequent purchaser . . . in the above described subdivision shall be eligible to belong to the Association. Upon payment of assessments levied by the Board of Directors during a fiscal year said owner or owners shall be considered paid members of the Association and shall be entitled to one (1) vote for each parcel of land owned.

¶18 Both parties also tender arguments based upon the Montana Nonprofit Corporation Act (MNCA). Section 35-2-113, *et seq.*, MCA. However, they note that the District Court did not rely upon the MNCA in its Decision and Order and we do not do so here.

¶19 The Association replies that Bordas incorrectly rely on the four corners of the Original Covenants as the language which controls this case. The Association asserts that, while the law requires strict interpretation of covenants which restrict the free use of land, this tenet is not applicable here, as the issue in this case has nothing to do with land use, but rather has to do with whether Bordas must pay a share of the maintenance expenses of the Subdivision. The Association points out that the cases which Bordas cite involved restrictions on

7

improvements which property owners were prohibited from building because of covenants. In the case at hand, requiring membership in the Association would not infringe upon how Bordas actually use their property or what improvements are made to it. Finally, the Association notes that, while the Original Covenants lack clarity, to conclude both that they do not allow for an amendment process and that Association membership is not mandatory would negate much of the covenants' contents and take away the power of the Association to collect funds for Subdivision maintenance.

¶20 Because the parties agree as to the facts of this case, we need only consider whether the District Court was correct when it determined that Bordas were entitled to judgment as a matter of law. *Glacier*, ¶ 21 (citations omitted). As a preliminary matter, we note that the District Court relied upon a prior Madison County case which it found to be factually similar to the case at hand. The parties to this appeal both addressed this case in their Briefs to this Court. From the record before us, it appears that this case was never appealed after the District Court made its ruling. It is axiomatic that a District Court case is not binding precedent upon this Court. Furthermore, we have not received a record of the previous case which would allow us to be persuaded as to its applicability. Thus, we decline to consider it in our analysis.

¶21 The District Court determined that the crucial covenants were those which were in place and of record at the time Bordas purchased their property. Whether those Original Covenants are sufficient to require Bordas to become Association members controls the outcome of this case. The District Court found no language within the Original Covenants

8

which *required* Bordas to become Association members. Moreover, it construed the Eligibility Clause within the Bylaws to mean that Subdivision property owners had a choice as to whether to join the Association. "There would be no need to insert the term 'eligible' if all owners are required to be members. To reach that conclusion, this Court would be required to ignore the phrase regarding eligibility," it noted.

¶22 We empathize with the Dissent's concern that, without the power to assess, the Association cannot provide the benefits promised by the Covenants. However, the precondition to mandatory payment of assessments is mandatory membership. Because the Covenants did not make membership mandatory, the Association cannot compel the payment of assessments from those who exercise the right to decline membership. That our ruling may undermine the Association's ability to serve its members is unfortunate, but not determinative.

¶23 The District Court further found that there was no language within the Original Covenants which provides for amendment, and noted that the Association conceded this as well. Thus, the District Court concluded that the only way in which to amend the Original Covenants would be to secure the unanimous vote of the existing property owners. The District Court distinguished *Windemere Homeowners Association, Inc. v. McCue*, 1999 MT 292, 297 Mont. 77, 990 P.2d 769, upon which the Association relied, on the grounds that its covenants provided for amendments, unlike the covenants at issue in this case. The District Court further found little support for the Association's contention that one must look at the language from all the various documents put forth in this case, noting that the Articles of

9

Incorporation and the Bylaws apply to the Association and its members only. Thus, they come into play only if membership is mandatory. Finally, the District Court concluded that the Association could neither force property owners to become members nor force non-members to pay assessments levied by the Association, and thus, the Association is not entitled to place liens against Bordas' property.

¶24 Restrictive covenants are construed under the same rules of construction as other contracts: courts read declarations of covenants on their four corners as a whole, and terms are construed in their ordinary or popular sense. *Windemere*, ¶ 13 (citation omitted). Applying these rules of construction to the Original Covenants and the Bylaws, we are constrained to agree with the District Court. Although the Association would like us to find the Eligibility Clause ambiguous and the amendment process implicit in the Original Covenants, we cannot do either, as we cannot insert in the documents something which is not there. Thus, we conclude that summary judgment was correctly granted to Bordas.

### CONCLUSION

¶25 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER

10

Justice Jim Rice dissenting.

¶26    I agree with the Court's implicit conclusion that the subdivision's Protective Covenants are determinative of the dispute here.  However, I believe a close review of the Covenants requires a different outcome.

¶27    The introductory paragraph of the Covenants states that "all" of the sites and lands within the subdivision are subject to "the protective covenants, conditions, restrictions and reservations hereinafter set forth."  No one contests that the Bordas property was subject to each and every condition and requirement set forth in the Covenants.

¶28    In the second introductory paragraph of the Covenants, these concepts are expanded further.  This provision states that "with prime consideration for the ecology and esthetics of the property," the developer has established a plan for the "protection, maintenance, development and improvement of said land," and therefore, the Covenants were for the "mutual benefit of all sites" and shall run with the land and be applicable to all "owners, their successors and assigns."  The question then becomes what conditions were imposed upon every site and every owner by these Covenants in order to fulfill the developer's plan to maintain and improve the property.

¶29    Paragraph 2 of the Covenants provides as follows:

> Declarant has caused a non-profit corporation to be formed, The Shining Mountains Virginia City Ranches Assoc., to administer all matters regarding surface water rights; location and procedures applicable to the drilling of water wells within the various easements; overseeing and maintaining of all common areas, including the upkeep, grading and

12

maintenance of the major traverse roads, the existing ranch fencing around the perimeter of the property, and the exterior lighting at each residence or outbuilding, overseeing, maintaining and stocking the lakes, streams and other water bodies within the property with trout; the receipt and expenditures of monies through such entity; and architectural approval after January 1, 1985, or if sooner provided.

Further provisions of the Covenants require that The Shining Mountains Virginia City Ranches Association ("Association") be responsible for approval of ancillary buildings (Paragraph 5) and for time of construction (Paragraph 8).

¶30    Thus, the Covenants established, for purposes of the subdivision, the Association and its role. The Covenants imposed, as a condition upon all property and owners, the power and duty of the Association, "for the mutual benefit of all sites," to administer all water matters, all easement and drilling matters, oversee the water bodies and trout stocking, to maintain all common areas, roads, fencing and each residence's exterior lighting, and to exercise architectural approval. In other words, this was the developer's plan mentioned above–that the Association would, for all owners, ensure an ecological and esthetic environmental setting. To carry out this plan, the Covenants enabled the Association to receive and make expenditures.

¶31    It is correct that assessments are not mentioned in the Covenants. That omission has given rise to the conflict today. However, despite that omission, it cannot be denied that the existence of the Association and its functions within the subdivision are Covenants which run with the Bordas property and which bind the Bordases. They are subject to the Association's authority, but further, they have received the benefits the Association provides

13

because of those Covenants: the roads, fences, common areas, bodies of water, fish, and even the exterior lighting at the Bordas property. This enhances their property. The Covenant which allows the Association to collect revenues may be ambiguous, but it can have only one logical interpretation: to authorize the Association to collect the revenues from the owners necessary to fulfill its duty to provide benefits to those same owners. Any other interpretation is an absurdity.

¶32 Affirming the District Court binds the Bordases and their property to the Association and its authority, and mandates that the Association provide the Bordases with the benefits of ownership provided by the Covenants, but bars the Association from collecting revenue from the owners it must serve, even though the power to collect is granted by the Covenants. However, this Court has rejected the use of narrow, technical rules for construction of real estate instruments, and has declared instead that such instruments "must be considered as a whole, in order to ascertain the intention of the parties." *Johannes v. Dwire* (1933), 94 Mont. 590, 593, 23 P.2d 971, 972. I believe the intent of the parties here, given the Covenants as a whole, was clear. The Bordases are to be paying the Association for the benefits they are receiving. I would reverse.

/S/ JIM RICE